998

PERCY ALEXANDER *v.* STATE OF ARKANSAS

CR 73-66                                  497 S.W. 2d 279

Opinion delivered July 23, 1973

*John W. Parkerson,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Charles A. Banks,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Percy Alexander, appellant herein, was charged with murder in the first degree, it being alleged that he murdered John Bradley by shooting him with a .22 caliber revolver. On trial, the jury found Alexander guilty and fixed his punishment at life imprisonment in the Arkansas Department of Correction. From the judgment entered in accordance with the verdict, appellant brings this appeal. It is first asserted that the trial court erred in its refusal to instruct the jury on the offense of manslaughter, and next asserted that the verdict is contrary to the law and the evidence.

Ark. Stat. Ann. § 41-2208 (Repl. 1964) defines voluntary manslaughter as a crime committed "upon a sudden heat of passion, caused by provocation, apparently sufficient to make the passion irresistible." Though we find no evidence that would justify this instruction, the point can be disposed of without a full discussion of the facts.

In the first place, the court did give the jury an instruction on second degree murder, but the jury found Alexander guilty of first degree murder. Since the jury viewed the killing as more than second degree murder, they certainly would not have found a still lesser degree of homicide, i.e., voluntary manslaughter. Any possible error for failure to charge the jury as to voluntary manslaughter, was thus rendered harmless by the fact that Alexander was found guilty of first degree murder. See *Brown* v. *State,* 219 Ark. 647, 243 S.W. 2d 938; *Newsome* v. *State,* 214 Ark. 48, 214 S.W. 2d 778, and cases cited therein.

In the next place, appellant did not offer an instruction on manslaughter, but only requested the court to give one. We have held numerous times that it is not the court's duty to give instructions on the appellant's theory of a case unless a correct instruction is presented to the court. See *State* v. *Lamb and Taylor,* 251 Ark. 999, 476 S.W. 2d 7 and cases cited therein.

We take the second allegation for reversal to mean that appellant views the evidence as insufficient to support the verdict. Again, we find no merit in the assertion. Difficulties between appellant and Bradley were occasioned by the fact that they were dating the same woman, Ruthie Bell Dawn. Testimony on the part of the State reflected that Miss Dawn was visiting Bradley at his home around 10:00 P.M. on May 11, 1972, a cousin of Bradley, Gregory Woodbury, also being present. Miss Dawn testified that while they were sitting on the front porch, appellant drove up in front of the house, stated, "Well, just sit there and I'll be back", and then drove off. She testified that she had ceased dating Alexander and had not had anything to do with him since February because he had beaten her and struck her across the head with a gun. The witness stated that subsequently, while still on the porch, she looked up the street and could see someone running down the street, then "duck in the hedges" and back out again, this person being Alexander. She said she then went upstairs to Woodbury's room to use the phone, and Alexander came in stating, "You thought I was lying, didn't you? I told you I was going to get you." According to the witness, Bradley then walked in and remonstrated with Alexander, and the latter fired a pistol striking Bradley.

She said that she observed the pistol in Alexander's pocket when he walked into the room, the handle protruding. The two began to fight and shortly thereafter, Alexander pulled the bedroom door open, grabbed Miss Dawn, and knocked her unconscious.

Gregory Woodbury testified that he had gone to bed and was awakened by appellant talking to Ruthie Dawn in his bedroom. Though his version of the killing differs somewhat[1] from that of Miss Dawn, he corroborated her evidence that Alexander was armed with a pistol when he came into the room, was the aggressor, and he stated that Bradley had no weapon.

Alexander testified that after driving in front of the Bradley house and being invited to come in, he drove on down to the liquor store, bought a half-pint of whiskey, "drunk almost all of it and went back over there." When he asked if he drank the whiskey to "get your nerve up", Alexander replied, "I guess you could say that, yes." and added, "to be ready for whatever happened. *** No, I didn't go looking for trouble but I was ready for it." He admitted that he parked his car quite some distance from the Bradley home, and when asked why he parked the car there instead of in front of the house, he responded, "I don't know." He also admitted prior difficulties between himself and Bradley over Miss Dawn and when asked if there was "bad blood" between the two of them, replied, "I guess you could say that. Yes." Appellant testified that he had earlier gone by Miss Dawn's house and not seeing her car there, decided to look for her at Bradley's home.

Alexander denied that he took the pistol to Bradley's home, or that he even owned a pistol; further testified that Bradley was the aggressor, first striking appellant; that he (Alexander) picked the pistol up off the floor during a scuffle with Bradley, the weapon discharging during the scuffle for possession of it. The conflicts in the testimony were matters for the jury to decide, and there was certainly substantial evidence offered by the State of sustain the verdict of first degree murder, if believed by the jury.

---

[1] The witness said that Alexander first struck Bradley with the pistol, and subsequently shot him after they had fought over the weapon.

While appellant requested the court to give an instruction on self-defense, the point is not here argued, nor would such an argument be valid. From the record:

"COUNSEL FOR APPELLANT:

The defense would move the court to instruct the jury as to the possibility of finding in self-defense as an absolute defense in this charge.

THE COURT:

You're asking for a jury instruction on self-defense?

COUNSEL FOR APPELLANT:

Yes, sir.

THE COURT:

Do you have one prepared?

COUNSEL FOR APPELLANT:

I do not."

This is the complete record with reference to a request for this instruction. As stated, the point is not argued, nor was any instruction offered.

Finding no reversible error, the judgment of the Garland County Circuit Court is affirmed.

It is so ordered.