Charlie Lee JONES, a/k/a Larry Joe ROGERS
*v.* STATE of Arkansas

CR 83-117                                665 S.W.2d 876

Supreme Court of Arkansas
Opinion delivered March 19, 1984

*John H. Bradley,* Dep. Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *Marci L. Talbot,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. Charlie Lee Jones was convicted of first-degree battery and aggravated robbery and was sentenced to consecutive terms of 20 and 40 years. There is no merit in his twelve arguments for reversal, which we discuss in five groupings.

On the afternoon of November 13, 1982, at about 2:45 or 2:50, Jones appeared at the home of Charles H. Payne, Jr., in south Blytheville. Payne testified that Jones asked for $15, drew a .22 pistol when Payne refused the request, tied Payne's hands, and shot Payne twice when Payne resisted by kicking Jones. One shot passed through Payne's arm, and the other entered Payne's lip and broke several teeth. Jones stopped shooting and ran hurriedly out the door. Payne freed himself and sought help from his neighbor, who took him to a hospital. The city police broadcast a description of Jones.

Apparently within a few minutes Jones carried his suitcase to downtown Blytheville and hitchhiked a ride with Matthew Beal, asking to be taken to the bus station. Beal estimated the time as having been 3:00 o'clock. After a stop at a liquor store Jones displayed a .22 pistol and forced Beal to drive out of town. Jones ordered Beal to stop and get out of the pickup truck. Jones took Beal's billfold, containing over $200, and took the clothes Beal had on. Jones then drove away in the truck. Beal found a piece of cardboard to wrap around himself and went to a house, whose owner called the police. Descriptions of Jones and the truck were broadcast.

An officer in Crittenden County, the next county to the south, received a description of the pickup truck at 3:45 and was called at 4:45 to assist another officer who had the truck in sight. After a chase Jones was apprehended. A .22 pistol was taken from him at the scene of his arrest, and when he was searched at the police headquarters in Marion the officers took from his person a wallet, a utility bill addressed to Matthew Beal, and a postcard addressed to Martha Beal. All four items were introduced in evidence without further identification.

I. Two arguments arise from a prospective juror's having seen Jones a few minutes before the trial was to start, when he was wearing blue clothing supplied at the jail. The court properly denied a defense request for a mistrial. A photograph of the clothing supports the trial judge's conclusion that it was not "prison garb," being merely a blue denim jacket and trousers bearing no numbering or lettering that would identify Jones as a prisoner. The point was not pursued; there is no indication that the person who saw Jones actually sat on the jury.

During the hearing a deputy prosecutor testified that he saw several people in the courtroom at the time of the incident, but he did not recognize any of them as possible jurors. The court overruled defense counsel's objection that a prosecutor trying the case should not be permitted to testify, but there was no request that he be disqualified from assisting in the trial. It is certainly true that the lawyer should not have testified in the case if he was to take part in

the trial, but the court's ruling was based on the fact that the clothing was not indicative of Jones's status as a prisoner. The deputy's testimony about whether prospective jurors might have seen the clothing was hardly relevant and certainly not prejudicial error.

II. Four argued points pertain to the trial court's conclusion that the two offenses being tried were part of a single criminal episode. The proof supports that conclusion. Jones, a stranger in town with no means of transportation, had assertedly committed a serious felony by shooting Payne twice. The judge and the jury could infer that he took flight, flagged down a passing driver, and held him up at gunpoint in order to flee in the truck, leaving the driver out in the country without clothing.

It is argued that the two charges, battery and robbery, should have been tried separately. Our former statutes, which restricted the crimes that could be charged in the same information, have been superseded by A.R.Cr.P. Rule 21.1 (b), which provides that two offenses may be joined when they are based on the same conduct or "on a series of acts connected together." Here the trial judge, in denying the motion for separate trials, could have found from the preliminary proof on the motion to sever and again from the proof at trial that the whole episode was practically continuous, that the shooting of Payne gave rise to the robbery and theft of Beal's pickup, and that Jones's flight continued until he was stopped within a short time by the police in an adjoining county. Jones presumably wanted the truck for flight, because he did not know the money was in the wallet when he took Beal's clothing and drove away in the truck.

The trial judge did not clearly abuse his discretion in finding that the language of the Criminal Rules did not require separate trials of the offenses. The same reasons support the court's action in allowing the two charges to be joined by an amendment to the information on the day of trial. Separate informations had been filed months before that; so there is no claim that the defense was surprised by the amended information.

Two other points relate to the proof of the arrest and the introduction of items seized as a result of that arrest. The testimony about the chase leading to the arrest was admissible, for the action of a suspect in fleeing from the scene of the crime is relevant to the issue of guilt, and such proof is proper even though the flight did not occur immediately after the crime. *Murphy* v. *State*, 255 Ark. 90, 498 S.W.2d 884 (1973). That Jones had a .22 pistol when he was arrested corroborated the testimony of the two victims that he had such a weapon earlier and confirms the trial court's finding that the two offenses were based on a series of connected acts. The court was not wrong in permitting the State to introduce the wallet, utility bill, and postcard without specific identification by Beal, for the nature of the articles themselves made them relevant to the jury's consideration of the case. The absence of specific identification went only to the weight of this circumstantial evidence, not to its admissibility.

III. By a pretrial motion Jones asked the trial Judge to rule that if Jones elected to testify he could not be cross-examined about his convictions within the preceding ten years for burglary, attempted rape, kidnapping, assault and battery, and robbery, plus three convictions for larceny. The trial judge held that such cross-examination would be permitted. Jones then chose not to testify, but he has standing to raise the issue on appeal. He met the conditions specified in *Simmons* v. *State*, 278 Ark. 305, 645 S.W.2d 680 (1983), by testifying in chambers that both the victims had made homesexual advances to him, which he resisted by shooting Payne and by fleeing in Beal's truck.

The trial judge's ruling was right. Uniform Evidence Rule 609 provides that certain prior convictions are admissible for impeachment if the court finds their probative value outweighs their prejudicial effect. Jones relies on our decision in *Jones* v. *State*, 274 Ark. 379, 625 S.W.2d 471 (1981), where we held that the prejudicial effect of a prior conviction for sexual abuse of a child would outweigh its probative impeachment value in a later similar case. We pointed out, however, that such a crime is particularly shameful and outrageous. The prior convictions in the

present case are not in that category; so they would be admissible for impeachment. *Floyd* v. *State*, 278 Ark. 342, 645 S.W.2d 690 (1983).

IV. Two arguments pertain to instructions. The offense of first-degree battery was properly submitted to the jury by AMCI 1601, for the jury could reasonably find that shooting a person in the mouth creates a substantial risk of death. The court's refusal to submit the lesser included offense of third-degree battery, even if error, was cured by the jury's choice of first-degree rather than second-degree battery, which was also submitted. See *Alexander* v. *State*, 254 Ark. 998, 497 S.W.2d 279 (1973).

V. The remaining three points for reversal are not of sufficient merit to call for discussion: (1) That the trial judge, during the voir dire, in some unspecified manner committed the jury to believing the State's witnesses; (2) that the court erred in permitting the State to withdraw an objection after it had been sustained; and (3) that the prosecutor's reference in his closing argument, to testimony as "undisputed" called attention to Jones's failure to testify.

Affirmed.