Frank Alan HEARD *v.* STATE of Arkansas

CR 84-158                                   683 S.W.2d 232

Supreme Court of Arkansas
Opinion delivered January 28, 1985

*William R. Simpson, Jr.,* Public Defender, *Jacquelyn C. Gregan,* Deputy Public Defender, by: *Jerry R. Sallings,* Deputy Public Defender, for appellant.

*Steve Clark,* Att'y Gen., by: *Alice Ann Burns,* Deputy Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant, Frank Heard, was convicted of second degree murder for the fatal shooting of William Stanfield, and challenges the sufficiency of the evidence by this appeal.

Appellant and Stanfield shared the same house and had argued a number of times in the past. On the night of the shooting they had argued and fought just outside appellant's room. Appellant grabbed his pistol from the dresser and as they struggled the gun discharged, fatally wounding Stanfield. The bullet struck Stanfield on the right side of his nose and entered his brain at an upward angle of twenty-five degrees. Appellant was found guilty and sentenced as an habitual offender to forty years imprisonment and given a $500 fine.

On appeal appellant argues only that the evidence was insufficient to support the conviction of second degree murder, specifically that there was no substantial evidence to show that appellant acted with the requisite mental state to sustain a conviction of murder in the second degree.

To constitute murder in the second degree under Ark. Stat. Ann. § 41-1503(1)(b), a person commits murder if "he knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life." The culpable mental state required for second degree murder as defined by § 41-1503(1)(b), is to "knowingly" cause such result. Ark. Stat. Ann. § 41-203(2) defines "knowingly."

A person acts knowingly with respect to his conduct or the attendant circumstances when he is aware that his conduct is of that nature or that such circumstances exist. A person acts knowingly with respect to a result

of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

Under this statute, the state had to prove that appellant acted with an awareness of his conduct, the relevant attendant circumstances and that his conduct was practically certain to cause the death of the victim.

On appeal the evidence will be viewed in the light most favorable to the appellee and the verdict will be affirmed if there is substantial evidence to support it. The evidence is substantial if the jury could have reached its conclusion without having to resort to speculation or conjecture. *Boone* v. *State,* 282 Ark. 274, 668 S.W.2d 17 (1984). As we have observed in other cases, intent or purpose behind an act, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence, but may be inferred from the facts and circumstances surrounding the act. *Chaviers* v. *State,* 267 Ark. 6, 588 S.W.2d 434 (1979). We need only consider that testimony that lends support to the jury verdict and disregard any testimony that could have been rejected by the jury on the basis of credibility. *Chaviers, supra.*

The appellant testified that he had been drinking earlier but at the time of the quarrel he was in control of his faculties and was aware of what he was doing. Appellant said when he reached for his pistol Stanfield was unarmed. Appellant testified that he had loaded the gun himself and when he grabbed the gun he was sure that he had his finger on the trigger. He said Stanfield grabbed his hand and the pistol, and as the two struggled with the gun, the gun was pushed into Stanfield's chest and "just went off." There was testimony that the two had argued on a number of occasions prior to the night of the shooting and that appellant had recently threatened to kill Stanfield and his son.

The expert testimony was damaging to appellant's explanation of the shooting. The ballistics expert testified that the type of gun used by appellant could be discharged by just pulling the trigger without cocking the gun. He stated the gun was of low quality and when discharged would

cause gunpowder residue to come out between the cylinder and the barrel, "just about everywhere there was an opening in the gun." The medical examiner testified that based on the amount of gunpowder residue on the body, the pistol was fired from a distance of eighteen inches to two to three feet from the victim. Stanfield's hands and the examiner testified that if the hands were near the muzzle there would be a residue on the hands. The victim's hands were also examined for any trace metal deposits and any pattern they might have. Deposits were found on the victim's hands, but none that were consistent with the pattern of any part of a gun. It was the examiner's opinion that the victim had not handled a gun recently before his death.

It is evident the appellant employed deadly physical force without justification, *see* Ark. Stat. Ann. § 41-507[1], and there was substantial evidence from appellant's own testimony as well as the expert witnesses for the jury to conclude that appellant "knowingly" caused Stanfield's death. The jury was not bound to conclude that the shooting was accidental and was not required to accept appellant's version as uncontradicted. It was for the jury to resolve the conflicting theories based on the evidence presented. See *Thomas* v. *State,* 266 Ark. 162, 583 S.W.2d 32 (1979); *Harris* v. *State,* 262 Ark. 680, 561 S.W.2d 69 (1978).

The judgment is affirmed.

---

[1] § 41-507. Justification — Use of deadly physical force in defense of a person. — (1) A person is justified in using deadly physical force upon another person if he reasonably believes that the other persons is:

(a) committing or about to commit a felony involving force or violence; or

(b) using or about to use unlawful deadly physical force.

Detach at perforation, moisten the back, and past over the first partial paragraph on page 460 of *Heard v. State:*

cause gunpowder residue to come out between the cylinder and the barrel, "just about everywhere there was an opening in the gun. " The medical examiner testified that based on the amount of gunpowder residue on the body, the pistol was fired from a distance of eighteen inches to two to three feet from the victim. Stanfield's hands were examined for offensive and defensive wounds of any kind and none were found. There was no gunpowder residue on the hands and the examiner testified that if the hands were near the muzzel there would be residue on the hands. The victim's hands were also examined for any trace metal deposits and any pattern they might have. Deposits were found on the victim's hands, but none that were consistent with the pattern of any part of a gun. It was the examiner's opinion that the victim had not handled a gun recently before his death.