Johnny Lee HILL a/k/a Johnny Leroy Hill, a/k/a Patrick Allen Whitley *v.* STATE of Arkansas

CR 89-10                                          773 S.W.2d 424

Supreme Court of Arkansas
Opinion delivered July 3, 1989
[Rehearing denied September 11, 1989.]

---

328

*Mark Roberts*, for appellant.

*Steve Clark*, Att'y Gen., by: *Lynley Arnett*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. The appellant was convicted of first degree murder and sentenced to life in prison. On appeal, he challenges the sufficiency of the evidence and the validity of a vehicular search. We affirm his conviction.

On Monday, May 25, 1987, Gary Sturdivant was found murdered in his mobile home near Malvern. He was found with his hands and feet tied. He had suffered a blow to his head, but

death was by strangulation. Investigating officers determined that several items were missing from the trailer, including a VCR, stereo speakers, billfold, Visa card, camera, watch and rifle. The victim's car, a 1986 Toronado Oldsmobile, was also missing. There was no sign of forced entry.

The last person to see Sturdivant alive was his friend, Charles Brooks. The two men had been drinking on the evening of Saturday, May 23. They had been to Garland County to buy liquor and had visited several people's houses before Sturdivant dropped Brooks off at Brooks' home around midnight.

A neighbor of Sturdivant's, Eddie Arrivete, saw the Oldsmobile arrive at Sturdivant's trailer between 11 p.m. and midnight that night. The car, which he assumed was driven by Sturdivant, was followed by a truck with three men in it. The occupants of both vehicles entered the trailer. Arrivete noticed that by 9 a.m. Sunday morning, the vehicles were gone. The men in the truck have never been identified.

Sturdivant's body was discovered the following day. The medical examiner determined the time of death was between 3 a.m. and 4 a.m. Sunday.

The appellant was never identified as being in Sturdivant's home or in his company, but he was seen near Malvern both before and after the murder occurred. Witnesses saw him on Saturday between 3 p.m. and 4 p.m. at a convenience store off Interstate 30 near Malvern. Later that night, he was seen hitchhiking on the Interstate near the Malvern exit between 9 p.m. and 10:15 p.m. Witnesses said he was carrying a duffle bag.

The appellant was next seen between 4 a.m. and 5 a.m. on Sunday driving the victim's car west on Interstate 30 near Prescott. According to a husband and wife truck driving team, Don and Sandra Miser, he was driving "terribly fast" and nearly ran them off the road. They blinked their lights at him and he pulled into a rest area, where he parked the car on the sidewalk. They identified the car as the Oldsmobile Toronado and said it had Arkansas plates.

Don Miser spoke with the appellant and, assuming he was drunk, told him to stay off the road. The appellant explained that he was an electrician living in Texarkana, that he had been to a

friend's funeral in Little Rock, and was on his way to Dallas. He said he had had too much to drink after the funeral, but Miser smelled no alcohol on his breath. Miser noticed a pillow covering the butt end of a rifle in the back seat of the car and told the appellant, "you'd better get that thing out in the open, being as the cops will get you for concealed weapons."

Hill apparently continued on to Dallas and was arrested there on May 29. Dallas police officers received information that a black man and a white man were at a convenience store attempting to sell stolen goods. Three non-uniformed officers arrived at the scene. Officer David Clark saw the appellant sitting in the Oldsmobile, approached him, and asked for identification. Hill could not produce any identification or any insurance papers on the car. He told the officer his name was David Patrick, and that he had bought the car from a man named Gary. When he was asked a second time, he said his name was Ashley Patrick Whitley.

The vehicle had a Texas license plate and Officer Clark ran a check on the vehicle. It showed the tags belonged on a different car. Officer Clark asked for permission to look in the trunk and Hill agreed. The trunk contained several items, including a checkbook and checks belonging to Gary Sturdivant, an Arkansas license plate, items of clothing, and a duffle bag like the one Hill had been seen with while hitchhiking. Seeing the papers, he asked about Gary Sturdivant and Hill said, "yeah, that's the man I bought the car from." Clark was curious why a man would sell his car and leave his checkbook and clothing in it and questioned the appellant further. He was then given a third name, Johnny Lee Hill.

The officer ran a check on the Arkansas license plate and discovered the vehicle was connected with a murder investigation. Hill was arrested and taken to the police station where he told yet another story about the car. He said he really did not buy it from a man named Gary, but the car was given to him by a man named Clyde at one of the missions in Dallas.

Hill was charged with capital felony murder. At trial, several state crime lab experts testified that no hairs, fingerprints or body fluids found at the victim's trailer could be matched conclusively to Hill.

It was discovered that the victim's Visa card had been used five times on Sunday May 24 between Arkadelphia and Dallas. It was used the first time at 4:19 a.m. at a convenience store at the Caddo Valley interstate exit near Arkadelphia, about 25 miles south of Malvern. It was later used in Texarkana, Rockwall, Texas, and twice in Dallas. Each time, the receipt was signed "Stevie Sturdivant." A crime lab analyst could not match the handwriting on the receipts to the appellant, but she stated that the sample submitted by the appellant showed evidence of deception.

At the close of the state's evidence, the appellant moved for a directed verdict, claiming there was not enough direct or circumstantial evidence for the jury to conclude he had committed the crime. The motion was denied.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). We will affirm the verdict if it is supported by substantial evidence, and circumstantial evidence may constitute substantial evidence. *Still* v. *State*, 294 Ark. 117, 740 S.W.2d 926 (1987). Circumstantial evidence must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. It will not rise to the level of substantial evidence if it leaves the jury only to speculation and conjecture in choosing between two equally reasonable conclusions and merely gives rise to suspicion. *Surridge* v. *State*, 279 Ark. 183, 650 S.W.2d 561 (1983).

We have affirmed murder convictions based entirely on circumstantial evidence. *See Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988); *Still* v. *State*, *supra*. The question here is, does the proof satisfy the test for substantial evidence?

Hill was seen fleeing the area in what could have been minutes after the victim's time of death. His manner of driving and his conduct described by the Misers are certainly consistent with flight from a crime, a factor which the jury may consider as evidence of guilt. *Jones* v. *State,* 282 Ark. 56, 665 S.W.2d 876 (1984).

Possession of property reported missing from the victim's home may be considered evidence of guilt. *See Gardner* v.

*State, supra.* The jury could have concluded Hill was in posses-
sion of Sturdivant's Visa card and his rifle and that he took those
items from Sturdivant's trailer. The dissent states there is nothing
to show the Visa card was in the trailer rather than in the car. In
determining the sufficiency of the evidence, the evidence and all
its reasonable inferences are viewed most favorably to the
appellee. *Blaney* v. *State*, 280 Ark. 253, 657 S.W.2d 531 (1983).
The jury could have concluded the card was in Sturdivant's
billfold, which was among the many items reported missing from
the trailer. That would be a fair interpretation of the evidence.
Members of the jury may use common knowledge and experience
in evaluating the evidence. *Chisum* v. *State*, 273 Ark. 1, 616
S.W.2d 728 (1981).

■ Hill's lies to the Misers and the Dallas police were
manifold, which could lead the jury to conclude he wished to hide
his identity, actions and whereabouts. False, improbable and
contradictory statements to explain suspicious circumstances
may be considered by the jury in determining guilt. *Dix* v. *State*,
290 Ark. 28, 715 S.W.2d 879 (1986).

■ If Hill did not kill Sturdivant or participate in his
murder, why was Sturdivant's vehicle in his possession? One
possibility is that he found it on the freeway, abandoned. He could
have stolen it from Sturdivant's trailer or from somewhere else.
He could have been given the vehicle by Sturdivant's killer. But
considering Hill's flight from the crime, the total circumstantial
evidence, and his false explanations, these conclusions are not
equally as reasonable as the conclusion that Hill either murdered
or participated in the murder of Gary Sturdivant. We conclude
the evidence is substantial and the jury did not have to resort to
speculation to reach its verdict.

■ The other issue concerns the validity of Hill's consent to
allow the vehicle to be searched by the Dallas police. The
appellant has presented no argument that he should have stand-
ing to question the search of a vehicle owned by another person.
Therefore, we find no unlawful search or seizure. *See Tippitt* v.
*State*, 294 Ark. 342, 742 S.W.2d 931 (1988). *See also Sanborn* v.
*State*, 251 Ga. 159, 304 S.E.2d 377 (1983) (no standing to
question search of a stolen car.)

We have examined the record for other errors as we are

required to do under Ark. Sup. Ct. Rule 11(f) and finding none, affirm the judgment.

Affirmed.

PURTLE, DUDLEY and NEWBERN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. Johnny Lee Hill, or whatever his name may be, is guilty of something, but the State has not proven him guilty of murder. I agree with all the parts of the majority opinion, but when they are assembled they do not add up to a whole we can label "substantial evidence" of murder. The state has come very close, but that is not enough. Our system of criminal justice is designed on the premise that it is better to let ten guilty persons go free than to convict one who is innocent of the crime charged.

The problem with the State's evidence is that there is nothing to place Hill at the scene of the crime. An investigator testified he had determined that a rifle was missing from Sturdivant's home, but there was no evidence showing that the rifle seen by the truckers in the Oldsmobile was the one which had been owned by Sturdivant. An investigator determined that Sturdivant's Visa card was missing, but there is nothing to show that it had been in the house, rather than in the car, assuming it was taken by Hill and used by him to make purchases.

The majority opinion asks: "If Hill did not kill Sturdivant or participate in his murder, why was Sturdivant's vehicle in his possession?" Several scenarios are then suggested, and the conclusion is reached that none of them is "equally as reasonable as the conclusion that Hill either murdered or participated in the murder of Gary Sturdivant." Missing is the *reason* none of them is as likely. Suppose Hill had been one of the three otherwise unidentified men who entered Sturdivant's trailer on the night of Saturday, May 23, 1987. How can we know he did not simply steal the car and leave the two others with Sturdivant? How do we know that he did not simply steal the car, having had no connection with these visitors? Assuming he stole the car, how do we know the rifle and the credit card, and for that matter Sturdivant's billfold, were not in the car at the time he stole it? What proof is there that he was inside Sturdivant's trailer when the crime was committed there, assuming it was committed in the

trailer?

It is unquestionable that circumstantial evidence may be sufficient to constitute substantial evidence. It is equally unquestionable that circumstantial evidence may not be sufficient. *See Johnson* v. *State*, 210 Ark. 881, 197 S.W.2d 936 (1946). To be sufficient, circumstantial evidence must "exclude every other hypothesis inconsistent with innocence." *Smith* v. *State*, 264 Ark. 874, 575 S.W.2d 677 (1979). Here the circumstantial evidence does not quite meet that standard.

The majority opinion cites *Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988), as an example of a murder conviction based on circumstantial evidence. There was no doubt in that case that the victim and the defendant were together at the time she died. The defendant admitted as much. We found there was substantial evidence, based on circumstances, to show the defendant pushed his wife off a bridge rather than witnessing her accidental fall. That is a far cry from this case where the circumstances support no more than the allegation that Lee stole Sturdivant's automobile.

Also cited is *Still* v. *State*, 294 Ark. 117, 740 S.W.2d 926 (1987), where the defendant admitted to having buried her paramour's body in her front yard. Her story was that he had committed suicide and she had buried him in the yard without telling anyone because her first husband, who also died of a gunshot wound, had been taken from her and buried in a place she could not visit. There, as here, we had lies showing guilt, but we also had evidence that the defendant specifically was trying to hide the death of the victim. Here we have only a showing that Hill was trying to hide something, and that something could just as easily have been theft of the car as murder of Sturdivant.

The conviction should be reversed and the case dismissed.

PURTLE and DUDLEY, JJ., join in this dissent.