Kenneth Thomas TRIMBLE v. STATE of Arkansas

CR 93-196                                                        871 S.W.2d 562

Supreme Court of Arkansas
Opinion delivered February 28, 1994
[Rehearing denied March 28, 1994.]

*Jeff Rosenzweig*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is a capital murder case arising out of the theft of hunting dogs belonging to Raymond Jacobs and the murder of Jacobs. The appellant, Kenneth Thomas Trimble, and John Young were both charged with capital murder. Trimble was tried first, convicted of the crime, and sentenced to life imprisonment without the possibility of parole. He appeals, raising seven points, none of which has merit. The judgment of conviction is affirmed.

The procedural history of this case involves both Trimble and John Young and is somewhat convoluted, which is part of the basis for Trimble's appeal. Raymond Jacobs raised hunting dogs at his home in Benton. On April 28, 1992, Young delivered four or five dogs to Jacobs, and Jacobs's records indicate that Young sold the dogs to him. On the evening of May 8, 1992, Jacobs's body was found in his barn at his residence. He had been stabbed multiple times with a pitchfork and bludgeoned with a hammer. Blood was found on the ground leading to the dog pens. Several of his dogs were missing.

Following the initial crime scene investigation, Saline County Sheriff's deputies travelled to Young's residence in Missouri and talked with him. At the time Young was not a suspect. Young told the investigators that he and Trimble had been at Jacobs's residence on May 8, 1992, and that he had picked up four dogs. Young said that Jacobs was alive when he left.

On May 11, 1992, Young was interviewed again. This time, he was informed that he was a suspect and was read his *Miranda* rights. On May 12, 1992, an information was filed charging Trimble and Young with theft of property, to wit, the dogs. On June 1, 1992, the charge was amended to capital murder and robbery. On June 4, 1992, Young was granted immunity on the capital murder charge by the circuit judge in return for his agreement to supply "complete and truthful information and data" to those investigating Jacobs's death.

After Young was granted immunity, he gave a statement

about events surrounding Jacobs's murder and stated that it was Trimble who killed Jacobs. Afterwards, Young took investigators to various locations in North Central Arkansas to recover physical evidence which included the blood-stained clothing of Young and Trimble, the collars of the stolen dogs, and the hammer used in the slaying. Young told investigators that he and Trimble had purchased new clothing at a Wal-Mart store in Clinton. This enabled the investigators to locate Crystal Shaffer, a Wal-Mart employee who sold the clothing.

Following Young's immunity grant and statement, Trimble was advised by his attorney to give his own statement. On June 23, 1992, Trimble gave a videotaped statement to Saline County Sheriff's deputies in which he admitted going to the Jacobs residence with Young and that Young intended to steal the dogs. He further admitted registering in a motel under a false name. He denied, though, that he participated in the murder of Jacobs and claimed that the murder was committed solely by Young. Trimble said that Young had been in the barn alone with Jacobs and came out with blood on his clothing. He also said that he got blood on his clothes after Young grabbed him. On the drive back to Missouri, Trimble told the deputies that Young threw the bloody clothes, dog collars, and hammer out the window. Trimble said he bought new clothes at a Wal-Mart store.

Following a hearing on August 24, 1992, Young's immunity was revoked by the circuit judge for inconsistent statements to the prosecutor and for failure to cooperate. Trimble then filed a motion to suppress his statement, claiming that it had been coerced because he only gave it after Young had been granted immunity and had made a statement implicating him and raising the issue of ineffective counsel.

On August 17, 1992 — the day before the trial began — a motion requesting that the circuit judge recuse because his son, John Lee Cole, was employed by the prosecuting attorney's office was heard. The judge concluded that his son, age 20, was working merely as an errand boy in the hot checks division during the summer and did not live at home. On that basis, he denied the motion.

Also at that hearing, the circuit judge brought up the matter of the State's revoking the grant of immunity to Young. The

prosecutor stated that Young would not be called as a witness against Trimble and that the State would not use any physical evidence recovered from Young after he was granted immunity on June 4, 1992.

The circuit judge then heard Trimble's motion to suppress his statement on grounds of coercion effected by Young's grant of immunity and statement and by ineffective counsel. Trimble testified that under these circumstances his attorney advised him that he had no choice but to give a statement. The circuit judge found no coercion and denied the motion.

The case was tried over two days on August 18-19, 1992. Trimble was convicted of capital murder and sentenced to life without parole.

On September 14, 1992, Trimble filed a motion for new trial alleging juror misconduct, the failure of Circuit Judge John Cole to recuse, and an improper grant of immunity to Young. In support of his motion, Trimble offered four affidavits: (1-2) Mark Marcus and David Hunter, who stated that they saw the son of the victim, Jeff Jacobs, talking with members of the jury; and (3-4) Kenneth Trimble and Lora Trimble, who stated that they were seated behind a person who was later selected as jury foreman, Michael Brown, and who said that Trimble looked "old enough to know better." Testimony was taken from the jury foreman and the son of the victim, both of whom denied the allegations.

On October 21, 1992, the circuit judge ordered Trimble to testify at Young's trial, which commenced that date. Trimble did so and testified essentially to what he said in his videotaped statement which was used against him at his own trial. Young was convicted of capital murder.

On October 26, 1992, Trimble filed an amended motion for new trial and a petition for writ of error *coram nobis* on grounds that at his trial, the State introduced his statement against him and labeled it as false. At Young's trial, however, he was ordered to testify. Trimble contended that if the State believed his statement was a lie at his trial, it either offered false testimony at Young's trial or learned after the first trial that Trimble's statement was true.

On November 9, 1992, the circuit judge denied Trimble's motion for a new trial and petition for a writ of error *coram nobis*.

## I. SUFFICIENCY OF THE EVIDENCE

We first consider whether the evidence was sufficient to support the verdict. The standard of review for determining the sufficiency of the evidence is clear and was recently set out in *Sheridan* v. *State*, 313 Ark. 23, 30-31, 852 S.W.2d 772, 775-776 (1993):

> On appeal, the appellate court does not weigh evidence on one side against the other; it simply determines whether the evidence in support of the verdict is substantial. *Brown* v. *State*, 309 Ark. 503, 832 S.W.2d 477 (1992); *Black* v. *State*, 306 Ark. 394, 814 S.W.2d 905 (1991). Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or another. *Lukach* v. *State*, 310 Ark. 38, 834 S.W.2d 642 (1992); *Smith* v. *State*, 308 Ark. 390, 824 S.W.2d 838 (1992); *Williams* v. *State*, 304 Ark. 509, 804 S.W.2d 346 (1991). Circumstantial evidence may constitute substantial evidence. *Hill* v. *State*, 299 Ark. 327, 773 S.W.2d 424 (1989). To be sufficient to sustain a conviction, the circumstantial evidence must exclude every other reasonable hypothesis consistent with innocence. *Bennett* v. *State*, 308 Ark. 393, 825 S.W.2d 560 (1992). This becomes a question for the fact finder to determine. *Id.* In determining whether there was substantial evidence, the court reviews the evidence in the light most favorable to the appellee. *Pope* v. *State*, 262 Ark. 476, 557 S.W.2d 887 (1977). Guilt may be proved, even in the absence of eyewitness testimony, and evidence of guilt is not less because it is circumstantial. *Smith* v. *State*, 282 Ark. 535, 669 S.W.2d 201 (1984). *See also Standridge* v. *State*, 310 Ark. 408, 837 S.W.2d 447 (1992); *Abdullah* v. *State*, 301 Ark. 235, 783 S.W.2d 58 (1990).

It is readily apparent that the evidence in support of the verdict was substantial, albeit circumstantial. Trimble was familiar with the dealings between Jacobs and Young and Young's dealings with three prior dog owners. He accompanied Young to

Jacobs's house knowing, by his own admission, that Young intended to steal the dogs from Jacobs. He later checked into a motel with Young, using a false name. His statement also supports the verdict with respect to the planning and travel to Benton, the initial attempt to steal the dogs, and later the attempt of the two men to get rid of their bloody clothes, the dog collars, and the murder weapon as well as Trimble's purchase of new clothes at the Wal-Mart store. His contention that the murder was perpetrated by one person is contrary to the physical evidence which reveals multiple blows from two weapons. Dr. William Sturner, Chief Medical Examiner for the Arkansas Crime Lab, found as many as 40 blows inflicted on Jacobs. The wounds were lacerating wounds and blunt force wounds suggesting two different weapons. A pitchfork was found under Jacobs's body. Trimble, in his statement, referred to a hammer as the weapon used by Young. The jury clearly was not bound by Trimble's version of the murder itself and based on the evidence presented could have concluded that Trimble was lying when he said he was not involved in the murder. *See Heard* v. *State*, 284 Ark. 457, 683 S.W.2d 232 (1985). We find no basis for reversal on this point.

## II. PROSECUTORIAL MISCONDUCT

Trimble's next asserted error is that the circuit judge abused his discretion in refusing to grant his motion for new trial due to prosecutorial misconduct. Specifically, Trimble points out that in closing arguments, the prosecutor labeled his version of Jacobs's death as "hogwash" and added that Trimble "lied to save his life." However, then the prosecutor obtained a court order that Trimble testify at Young's trial, where Trimble gave the same version of events as he did at the first trial. Trimble argues that the prosecutor either knew that his statement was the truth and lied when he labeled it as untrue or, alternatively, that between Trimble's trial and Young's trial, the prosecutor learned that Trimble had been telling the truth and failed to support his motion for a new trial. Trimble adduces Rule 3.3 of the Rules of Professional Conduct prohibiting a lawyer's introduction of false evidence in support of his argument.

In reading the prosecutor's closing argument at the Trimble trial, it is clear that it was the claim that Young acted alone in killing Jacobs which the prosecutor contended was a lie. The

prosecutor, nevertheless, believed that portion of Trimble's statement concerning the planning of the crime and the events leading up to the murder and the aftermath of the murder as well. We know of no reason why a prosecutor should be foreclosed from contesting part of a defendant's statement which the prosecutor believes to be untrue. What Trimble advocates is that whenever a defendant gives a statement detailing a crime but denying ultimate culpability, the prosecutor when using the statement at trial cannot contest that denial. Such a ruling would unduly hamstring prosecutors and place them in the untenable position of gauging credibility on all aspects of a witness's statement before offering that witness's testimony. We know of no law requiring such. Trimble's argument has no merit.

### III. ILLEGAL GRANT OF IMMUNITY TO YOUNG

Trimble also contends that the circuit court erred in refusing to grant his motion for new trial due to the acquisition of evidence against him occasioned by an illegal grant of immunity to Young. In support of this point, he offers that the grant of immunity to Young was improper because it was "full transactional immunity" while the applicable statute, Ark. Code Ann. § 16-43-601 (1987), only permits "use immunity." In addition, he argues that had this grant of immunity not been made to Young, Young would not have cooperated with the authorities and without Young's help, the police would not have amassed the evidence which was necessary to convict Trimble. The precise items of evidence listed in Trimble's brief which were gathered from Young are the name of the Wal-Mart store in Clinton, the clerk's name at the Wal-Mart store, and the name of the motel in Benton. No other contested evidence is listed in Trimble's brief. Trimble concludes by advancing the argument that this evidence is tainted irrespective of Trimble's later statement which covers the same ground. Trimble notes on this point that the prosecutor assured the circuit court that he would not use any evidence or testimony gleaned from Young after the grant of immunity.

As a threshold matter, we conclude that Trimble has no standing to contest the kind of immunity granted to Young. *See generally Vickers* v. *State*, 313 Ark. 64, 852 S.W.2d 787 (1993); *Manatt* v. *State*, 311 Ark. 17, 842 S.W.2d 845 (1992). Information gathered by virtue of Young's immunity, however,

is a different matter, at least with respect to the use of such evidence against the person who was granted immunity. *See United States* v. *Brown*, 801 F.2d 352 (8th Cir. 1986). Here, that person is Young. Yet, the prosecutor also advised the circuit judge that he would not use the Young evidence against Trimble. According to Trimble, he did exactly that when he used the evidence gathered at the Wal-Mart store and the Benton motel.

We do not consider this circumstance, though, to be a basis for reversal. Trimble made no objection to the evidence alleged to be dubious when offered so as to alert the circuit judge to its questionableness and to preserve the matter for appeal. *See Tucker* v. *State*, 313 Ark. 624, 855 S.W.2d 948 (1993); *Heywood* v. *State*, 297 Ark. 218, 760 S.W.2d 218 (1988). The point, accordingly, is not reviewable.

## *IV. RECUSAL*

Trimble's third point is that the circuit judge erred in not recusing because his son worked for the prosecutor during the summer of the trial. According to statements made by counsel at hearing, the judge's son, John Lee Cole, who was age 20 at the time, worked in the hot check division of the prosecutor's office during the summer of 1992. He was an errand boy and did not live in the judge's home. Trimble argues that even if the judge's initial decision not to recuse was proper, the judge should have recused after allegations of the prosecutor's misconduct in this case were brought to light. Trimble further posits that the situation was such that it was reasonable to question the judge's impartiality under these circumstances which violates Canons 2 and 3C(1) of the Arkansas Code of Judicial Conduct. He concludes that the judge's refusal to disqualify prevented him from receiving a fair trial.

Canon 2 provides generally that a judge should avoid the appearance of impropriety. Canon 3C(1) of the Judicial Code is more specific:

> A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
>
> (a) he has a personal bias or prejudice concerning a

party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(c) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

That canon does not precisely cover the conduct complained of here.

██ We agree with Trimble that the appearance generated by the employment of a judge's son at the prosecutor's office is none too good. At the same time, we are not prepared to say that the canons have been violated or that the conviction must be reversed. Other jurisdictions have considered the bias occasioned by the employment of a judge's son, but have not found that that sole circumstance was sufficient to reverse a conviction on grounds of lack of fairness. *Wilmington Towing Co. v. Cape Fear Towing, Co.*, 624 F.Supp. 1210 (EDNC 1986) (judge not disqualified by son's summer internship in law firm representing a party); *State* v. *Loera*, 530 So.2d 1271 (La.App. 2 Cir.

1988) (judge not required to recuse in criminal case where his daughter was an assistant district attorney in the office prosecuting the case but was not involved in this specific case); *State* v. *Logan*, 236 Kan. 79, 689 P.2d 778 (1984) (trial judge's son was an attorney in the district attorney's office but this fact did not require reversal).

Disqualification matters under Canon 3C(1) are discretionary with the trial judge. *Roe* v. *Dietrich*, 310 Ark. 54, 835 S.W.2d 289 (1992). The son's summer employment in and of itself does not warrant reversal. No additional basis for recusal or prejudice to Trimble is presented apart from his general disagreement with some of the judge's rulings. We find no abuse of discretion in the circuit judge's refusal to disqualify.

### V. INEFFECTIVE COUNSEL

For his next point, Trimble urges that his statement should have been suppressed because it was obtained as the result of coercion and ineffective assistance of counsel. Because the issue of ineffective counsel was raised as part of the pretrial motion to suppress, we will consider it.

We do not agree, however, with Trimble's contention. We have no doubt that the advice of Trimble's counsel to give a statement after Young's grant of immunity and statement was tactically made. We have made it clear in the past that we will not make a finding of ineffectiveness when a strategic decision is questioned on review. *Missildine* v. *State, supra; Burnett* v. *State*, 310 Ark. 202, 832 S.W.2d 848 (1992). Moreover, trial counsel had no way of knowing that Young's immunity would later be revoked.

We also observe that the mere fact that Young was given immunity and made a statement did not force Trimble to do the same. Indeed, he was free not to do so but decided, on advice of counsel, to tell his side of the story. Young's immunity was subsequently revoked but that has no bearing on the validity of Trimble's statement. Young's cooperation may have been a catalyst for Trimble's own statement but this does not translate into coercion or ineffectiveness on the part of counsel.

## VI. MANSLAUGHTER INSTRUCTION

Trimble further argues that the circuit court erred in refusing to instruct the jury on manslaughter as a lesser included offense of capital murder under Ark. Code Ann. § 5-10-104(a)(4) (1987). The rational basis asserted by Trimble for giving this instruction is that the jury could have found him criminally negligent because he went to Jacobs's house with the knowledge that Young was going to steal dogs, and he allowed Young to go into the barn with the victim.

We agree with Trimble that whenever there is a rational basis for giving an instruction, it must be given. *Rainey* v. *State*, 310 Ark. 419, 837 S.W.2d 453 (1992); *Sanders* v. *State*, 305 Ark. 112, 805 S.W.2d 953 (1991). But we cannot agree that the manslaughter instruction premised on Trimble's negligence is appropriate under these facts. The evidence did not suggest that Jacobs was killed for any purpose other than to facilitate the theft of his dogs. Trimble, by his own admission, knew about the proposed theft in advance and drove with Young to Jacobs's house for that purpose. Theft is an intentional act from which violence might easily follow. There is no factual basis to support a crime based on negligence. The circuit court correctly refused to give the instruction.

## VII. JUROR MISCONDUCT

Trimble claims juror misconduct in that after trial four individuals came forward and offered affidavits stating that one member of the jury expressed opinions about the case before he was selected and that at least one member of the victim's family had talked with a juror during trial. Trimble concedes that the jury foreman, Michael Brown, and the victim's son, Jeff Jacobs, denied the allegations of misconduct under oath, but argues that the circuit judge's decision to deny the motion for new trial was tainted by his refusal to recuse.

Jury misconduct is a basis for granting a new trial under Rule 59 (a)(2). *See Hacker* v. *Hall*, 296 Ark. 571, 759 S.W.2d 32 (1988). The decision whether to grant a new trial under Rule 59 (a)(2) is discretionary with the trial judge who will not be reversed absent an abuse of that discretion. *Diemer* v. *Dischler*, 313 Ark. 154, 852 S.W.2d 793 (1993). The burden

of proof in establishing jury misconduct is on the moving party. *Id.* The moving party must show that the alleged misconduct prejudiced his chances for a fair trial and that he was unaware of this bias until after trial. *Owens* v. *State*, 300 Ark. 73, 777 S.W.2d 205 (1989); *Hendrix* v. *State*, 298 Ark. 568, 768 S.W.2d 546 (1989).

While we have some doubt that the information surrounding the allegations of misconduct were only discovered *after* trial, we will address the merits of the argument. The issue of misconduct was contested. The juror alleged to have made a biased statement about Trimble denied it, and one of the victim's sons testified that he did not shake a juror's hand or talk to jurors. We further note that the four affiants making the charges were either family of Trimble or related by marriage.

Under these circumstances, we have no hesitancy in deferring to the decision of the circuit judge. *See Porter* v. *State*, 308 Ark. 137, 823 S.W.2d 846 (1992).

The record has been examined for other error in accordance with Ark. Sup. Ct. R. 4-3(h), and no reversible error has been discovered.

Affirmed.