John Richard LUKACH, Jr. *v.* STATE of Arkansas

CR 91-293 834 S.W.2d 642

Supreme Court of Arkansas
Opinion delivered June 22, 1992

*Larry W. Horton,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Didi H. Sallings,* Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, John Richard Lukach, Jr., was convicted of raping a five year old girl and committing burglary and was sentenced to life imprisonment for rape and twenty years for burglary, to run consecutively. He appeals on several grounds, including the lack of sufficiency of the evidence and the failure of the circuit court to grant him a continuance to test certain blood, hair, and saliva samples and to investigate the whereabouts of a red truck with California license plates which his counsel asserts was seen on the morning of the crimes in the area. We affirm the convictions and sentences.

On the morning of June 8, 1991, at about 5:20 a.m., Rhonda Ivy, a resident of Jones Mill, was getting ready for work when she heard a noise in her child's bedroom. She entered the bedroom and saw a man climbing through the window. She screamed, and the man ran away. The man, she said was wearing blue jeans and what sounded on the pavement like cowboy boots and was carrying either a shirt or a rag in his hand. At the ensuing trial, she positively identified Lukach as the man.

That same morning at about 6:45 a.m., the five-year-old daughter of Francis and JoAnn Kane came into their bedroom and said that a man had hurt her. Blood was running down her legs. When the parents surveyed the child's bedroom, they discovered that the bed sheet was missing and that the mattress had a large spot on it which was subsequently identified as blood. A physician, Dr. Bruce White, later examined the victim. He found bruises on her face and multiple tears and lacerations to her vaginal area.

Mark Stroup, who lived behind Rhonda Ivy, heard her screams that morning. Before hearing Ivy's screams, he saw Lukach park a gray pickup truck on the road some distance from his house. Lukach was not wearing a shirt but was wearing blue jeans and cowboy boots. Later, Stroup saw Lukach carrying a sheet with some "red stuff" on it. When the police appeared, Lukach ran behind a house and escaped. Another witness, Timothy Jensen, was with Stroup and also saw Lukach. He

confirmed that Lukach was wearing blue jeans and cowboy boots.

Lukach was next seen by Mark Stroup and others walking back to his gray pickup truck. He was now wearing cutoff blue jeans and no shirt. He told Hot Spring County Deputy Sheriff John Nooner that he was having trouble starting his truck, but when the deputy attempted to start it, the engine ignited immediately.

On June 10, 1991, Lukach was charged with the rape and burglary of the Kane home, and his jury trial was set for August 26, 1991. On June 17, 1991, a hearing was held on the State's motion to take blood, hair, and saliva samples from Lukach, and the court granted the motion. On July 10, 1991, Lukach filed a Bill of Particulars and included in this discovery request a prayer for all information and documentation concerning scientific testing. No request for independent testing was made in the Bill of Particulars. Six days before trial on August 20, 1991, the State provided most of the discovery information, including the scientific testing to Lukach.

On August 23, 1991, counsel for Lukach moved for a continuance on grounds that he desired to perform independent testing of the samples evaluated by the State and needed additional time to do that and to investigate further a red truck with California plates which was said to be in the area of the crime. Lukach's attorney included in the motion a statement that his prior commitments made it "extremely difficult to properly prepare for trial in such [a] short period of time." The circuit court denied the motion for independent testing as untimely. The court did say that it would reserve ruling on the motion as it related to the red truck until it heard the testimony. There was no testimony about the red truck at trial, and no subsequent motion for a continuance was made by Lukach.

Lukach was tried during a period of two days and was convicted of both offenses and given consecutive sentences of life imprisonment for rape and twenty years for burglary. On September 5, 1991, he moved for a new trial, alleging that the Hot Spring County Sheriff's office had received a scientific report on fibers removed from the victim's blanket and sheet and from Lukach's clothing during the second day of the trial which it did not make available to Lukach. The motion for new trial was

denied based on lack of prejudice to the appellant.

## I. SUFFICIENCY OF THE EVIDENCE

For his first point, Lukach argues that this is a circumstantial evidence case, and that the proof was insufficient for conviction. We do not agree.

██ The general rule with respect to the sufficiency of the evidence is that the evidence to support a conviction, whether direct or circumstantial, must be of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. *Smith* v. *State*, 308 Ark. 390, 824 S.W. 2d 838 (1992). We will affirm the verdict of the trial court, if it is supported by substantial evidence, and circumstantial evidence may constitute substantial evidence. *Hill* v. *State*, 299 Ark. 327, 773 S.W.2d 424 (1989).

██ To be sufficient to sustain a conviction, the circumstantial evidence must exclude every other reasonable hypothesis consistent with innocence. *Bennett* v. *State*, 308 Ark. 393, 825 S.W. 2d 560 (1992). This becomes a question for the factfinder to determine. *Id.* In determining whether there is substantial evidence, the court reviews the evidence in the light most favorable to the appellee. *Pope* v. *State*, 262 Ark. 476, 557 S.W.2d 887 (1977). Guilt may be proved, even in the absence of eyewitness testimony, and evidence of guilt is no less substantial because it is circumstantial. *Smith* v. *State*, 282 Ark. 535, 669 S.W.2d 201 (1984).

The evidence against Lukach in this case, albeit circumstantial, is more than sufficient to sustain the convictions. Rhonda Ivy, a neighbor of the victim, positively identified Lukach after he tried to climb through her child's bedroom window on the morning of the Kane rape and burglary and described what clothes he was wearing.

Mark Stroup, who lived behind Ms. Ivy, also placed Lukach in the crime area and corroborated her description of what he was wearing. He described Lukach's furtive actions and later saw him carrying a sheet with "red stuff" on it. Timothy Jensen also identified Lukach and his clothing.

There was significant physical evidence connecting Lukach

to the crimes. A pair of blue jeans and cowboy boots were recovered from the home of Lukach's mother on June 8, 1991. A forensic serologist for the State Crime Lab, Jane Parsons, analyzed Lukach's saliva and blood samples and determined that he was a type AB secretor, which she said was uncommon. The victim was a type A non-secretor. On the victim's underpants, the serologist found stains corresponding to what an AB secretor would produce. Similar stains connecting an AB secretor were found on the victim's blanket.

A second serologist, Lisa Calhoun, also from the State Crime Lab testified that she found eleven hairs on the victim's bedsheet that were similar to the victim. She also found six pubic hairs similar to hairs taken from Lukach on the bedsheet, and eighteen hairs which she identified as cat hairs. Pubic hairs similar to those of Lukach were also found on the victim's blanket. On Lukach's blue jeans, she found one strand of hair similar to the victim's and two hairs from a cat. The relevance of the cat hairs is Francis Kane testified that a cat slept with the victim.

All of the evidence pointed to the appellant as the assailant, and it was compelling. In light of this evidence, we can ascertain no other reasonable hypothesis consistent with the appellant's innocence, and we affirm the circuit court's ruling on sufficiency of the evidence.

## II. CONTINUANCE

Lukach next contends that he was denied a fair trial because he was denied the right to a continuance for the purpose of doing independent testing on the blood, hair, and saliva samples. Lukach moved for a continuance on August 23, 1991, three days before trial and asked for a delay of not less than two weeks. He underscored two factors in his motion. The first was that he did not know what the State Crime Lab results were until six days before trial. The second was that his father did not agree to pay for the testing until the Crime Lab results were made available.

We agree with the circuit court that Lukach's motion on independent testing was untimely under Ark. R. Crim. P. 17.1(c). In his original request for discovery made on July 10, 1991, he did not ask to do scientific testing, although he was well aware that the State was testing hair, blood, and saliva samples because it

had taken samples from him on June 17, 1991. When he had not received the state discovery, including the Crime Lab tests, within a reasonable period of time, he could have moved to compel discovery, which he did not do. He apparently made no effort to arrange for an expert to perform the tests prior to filing his motion though he knew trial was set for August 20, 1991. No reason is given for why Lukach's father waited until three days before the trial to appear and agree to pay for the tests. Counsel for Lukach also admitted in his motion that he was busy during this period of time with "prior commitments."

 We have held that a defendant should have the opportunity to challenge conclusions drawn from tests undertaken by the State. *Dumond* v. *State*, 290 Ark. 595, 721 S.W.2d 663 (1986). A serious interest in scientific testing, however, must be voiced in timely fashion under Ark. R. Crim. P. 17.1(c) and before the eleventh hour. Here, Lukach showed no such interest in testing until three days before trial. He argues that action on his part was not necessary until he knew the results from the State Crime Lab. We cannot agree. A legitimate motive to test and challenge the State's results is best evidenced by 1) asking for independent testing sufficiently in advance of the trial, and 2) taking such steps as are necessary to arrange for the testing which would include obtaining an expert and making certain that the samples were available in sufficient time for the testing to occur. Lukach took none of these steps which renders his motives in asking for a continuance at such late date suspect.

In a recent case, this court was faced with the similar task of determining whether error had occurred in not allowing the defense counsel an opportunity to test suspected marijuana. *Lewis* v. *State*, 309 Ark. 392, 831 S.W.2d 145 (1992). In *Lewis*, the appellant made his request to test two weeks before trial and the question raised was whether the appellant was timely in his request. We held that the request was not timely and further observed that Lewis had made no showing that he had independent grounds to contest the Crime Lab's findings.

Comparable decisions have been made in analogous cases in other jurisdictions. *See United States* v. *Harper*, 505 F.2d 924 (5th Cir. 1975); *Prater* v. *State*, 171 Ga. App. 122, 318 S.E.2d 816 (1984); *See also* "Right of Accused in State Courts To Have

Expert Inspect, Examine Or Test Physical Evidence In Possession of Prosecution," 27 A.L.R. 4th § 6, pp. 1215, *et seq* (1984). In *Harper*, the appellant moved to test heroin six days before trial, and the trial judge refused to delay the trial. The Fifth Circuit affirmed and held that the trial judge did not abuse his discretion in denying the continuance because the appellant did not exercise due diligence in obtaining his own expert witness, was late in making his motion, and did not contest the qualifications of the government's expert who testified that the substance was heroin.

In *Prater* v. *State*, the test at issue was whether a pistol could fire without pulling the trigger, and the results were made available the day of the trial. The test results were that the pistol could only fire by pulling the trigger. The appellant moved for independent testing, and the trial court denied the motion. The Georgia Court of Appeals affirmed on the basis that the motion was not timely. The appellant argued that no independent testing was necessary until after the State results were in hand. The Court of Appeals rejected the argument and noted that the appellant had had ample opportunity to examine the pistol but had failed to make a request to do so in timely fashion.

We hold, similarly, in the case before us that the circuit court did not abuse its discretion in finding that Lukach was untimely in his request. Our holding is bolstered by the fact that Lukach presented no evidence and no theory to undermine or contravene the serologists' testimony, and he did not attack the serologists' qualifications.

On the subject of the red truck with California plates, we can find nothing in the record that evidences the fact that the truck was in the area on the morning of the crimes. Counsel for Lukach argued to the court in support of his motion that a photograph of the truck was part of the State's discovery on August 20, 1991, and that the victim had said that the assailant had gray hair while Lukach's hair was red. Other than arguments made by counsel, there was no proof of record of a red truck or a statement that the assailant had gray hair.

We, finally, note that Lukach did not pursue his motion for a continuance on the basis of the red truck after the trial commenced, although the circuit court had expressly reserved judgment on this aspect of the motion, pending testimony.

Without more, we cannot say that the circuit court abused its discretion in denying a continuance on this point.

## III. CONFRONTATION OF WITNESSES

The victim did not testify at trial. The circuit court had ruled her competent to testify, but after she was sworn as a witness, she refused to answer questions. This, the appellant urges on appeal, denied him his right to confront a key witness against him as guaranteed by the Sixth Amendment to the U.S. Constitution.

██ The argument is meritless. Lukach never objected to the victim's testimony and never voiced his confrontation argument to the circuit court. His argument, therefore, was not preserved for appeal. *Porter* v. *State*, 308 Ark. 137, 823 S.W.2d 846 (1992); *State* v. *Withers*, 308 Ark. 507, 825 S.W.2d 819 (1992).

## IV. NEW TRIAL MOTION

For his final point, Lukach argues that he was prejudiced by the State's failure to reveal to him the results of fiber testing by the State Crime Lab which were made available to the Hot Spring County Sheriff's Department on the second day of the trial. Lukach did not find out about the tests until after the trial had concluded.

██ Though the fiber analysis was not provided to Lukach, the prosecuting attorney averred that he did not know of its existence either. Even though the prosecutor may deny knowledge of the report, that information is still imputed to him. *Dumond* v. *State, supra*. The appellant, however, failed to show any prejudice resulting from the State's lapse. The fiber analysis report was found by the circuit court not to be exculpatory, and we agree.

██ In *Thomas* v. *State*, 300 Ark. 103, 776 S.W. 2d 821 (1989), we faced a similar issue. Thomas requested a new trial based on the failure of the State to provide him with a statement which was made by the victim. The circuit court ruled that the statement was not exculpatory, and hence Thomas was not prejudiced. We affirmed and cited authority for the principle that withheld evidence is material only if it has a reasonable probability of producing a different result at trial. The evidence in

*Thomas* would not have changed the result. Nor would the fiber report in the case before us. Accordingly, there was no prejudice to the appellant caused by the State's omission.

■ Pursuant to Ark. Supreme Ct. Rule 11(f), the Attorney General abstracted certain objections by the appellant in its brief. A potential juror did state on voir dire that she thought the defense would have to prove Lukach's innocence. An objection was made, and the circuit court denied Lukach's request that she be struck for cause. It is not known, however, whether the defense used one of its peremptory challenges to strike this potential juror or whether she actually sat as a juror. The burden is on the appellant to bring up a sufficient record to demonstrate error. *Rhodes* v. *State*, 293 Ark. 211, 736 S.W.2d 284 (1987). This he failed to do.

Because a life sentence is involved, the record has been examined in accordance with Ark. Sup. Ct. R. 11(f), and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed.