David Lee TILLER *v.* STATE of Arkansas

CA CR 92-1023 854 S.W.2d 730

Court of Appeals of Arkansas
Division I
Opinion delivered May 19, 1993

*Timothy Buckley*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant, David Tiller, was found guilty by a jury of attempted burglary and was sentenced as a habitual offender to thirty years in the Arkansas Department of Correction. We reduce the judgment to attempted criminal trespass and remand for resentencing.

A person commits burglary if he enters or remains unlawfully in an occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a) (1987). A person attempts to commit an offense if he purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as he believes them to be. Ark. Code Ann. § 5-3-201(a)(2) (1987).

At trial, Deanna Hinderliter testified that on January 10, 1992, she and her husband were living in an upstairs apartment in a large apartment complex. The Hinderliters both worked nights but Mrs. Hinderliter was not required to work on January 10. She said after her husband left for work she was cleaning house, doing laundry, and watching television when someone knocked on the door. She explained that it is her policy not to answer the door when her husband is not at home; however, she did look through the peephole in the door and saw appellant, her next-door neighbor, standing at the door. She said the door was locked with the regular lock and a deadbolt lock, and as she remained quiet and watched, appellant started twisting the door knob and looking around. According to Mrs. Hinderliter, appellant then put a piece of plastic in the door and tried to flip the bottom lock. She watched him for a while, then went back and sat down; when she heard appellant's apartment door close, she looked out the peephole again and he was gone.

Mrs. Hinderliter said she called the police, but after being told an officer would have to come to her door and talk to her then go to Mr. Tiller's door, she told them to "just forget about it for now" because she did not want appellant to know she was home.

She testified that later appellant came to her door again. This time he did not knock but just started attempting to unlock the door. Mrs. Hinderliter said she couldn't see what was in his hand, but she knew it was metal because she could identify the sound of metal scraping against the metal door; and when she looked through the peephole she could see appellant pushing on the door and looking around. She said she could hear wood popping and breaking and was afraid the door would not hold, so she called the police again.

Mrs. Hinderliter related that as officers examined the damage to the door, a metal piece fell off. After the officers left she tried to screw the piece back on, but she still had trouble keeping the door closed and she had to deadbolt it. She also said the metal door had dents on the edge of it, and the wooden doorjamb was split.

On cross-examination Mrs. Hinderliter said appellant and his wife had lived in the next apartment when she and her husband moved in. She described them as "down on their luck"; they had no car or telephone and neither of them had a job. She explained that they met when the Tillers' child had a seizure and afterward she and her husband allowed the Tillers to use their phone. They also took the Tillers to the store and Mr. Hinderliter even tried to arrange a job for appellant but "that fell through." She said that the Tillers became annoying because they would come over to use the phone at inconvenient times, sometimes more than once a day, and they gave the Hinderliters' telephone number to their friends who frequently called and left messages for the Hinderliters to relay to the Tillers.

Mrs. Hinderliter also disclosed that she had signed "some papers" for the appellant which purportedly allowed his family to get food stamps. Later, appellant told her he had gotten some forms from the "Unemployed Parent" for her to sign, but he had gone ahead and signed them for her. She said, "he didn't have a right to sign my name," and for that reason she and her husband had "cut off complete contact" with the Tillers.

Gary Crews, a Fayetteville police officer, testified that after talking to Mrs. Hinderliter, he arrested appellant and when appellant produced his driver's license, the edges were all jagged and torn up, which, the officer said, indicated that the plastic card

had been used to "jimmy" a door lock. He said appellant admitted that he had gone to Mrs. Hinderliter's apartment twice that evening but had insisted he only wanted to use her telephone. Officer Crews also testified that a man who identified himself as Reverend McGarrah told the officer he had just returned from driving appellant to the store to use the telephone.

Officer Robert Haas testified that the doorjamb to the Hinderliters' apartment was very scratched, the latch plate fell off, underneath the latch plate was scuffed up, and the door would not stay closed.

Reverend Russell McGarrah testified for the defense that he and his wife visited the Tillers on the day involved, and appellant had gone to the apartment next door a couple of times to try to use the phone but no one was home. McGarrah said he and appellant then went to a nearby store so appellant could use a phone and when they returned to the apartment complex the police were there.

 Appellant argues on appeal that the trial court erred in denying his motion for a directed verdict on the basis that the prosecution's evidence was insufficient to find that he was guilty of attempted burglary beyond a reasonable doubt. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *McIntosh* v. *State*, 296 Ark. 167, 753 S.W.2d 273 (1988), *Hutcherson* v. *State*, 34 Ark. App. 113, 806 S.W.2d 29 (1991). On appeal, this court does not weigh the evidence favorable to the accused; it views the evidence in the light most favorable to the State, considering only the evidence that tends to support the conviction, *Hodge* v. *State*, 27 Ark. App. 93, 766 S.W.2d 619 (1989), and affirms the judgment if there is any substantial evidence to support the finding of the trier of fact. *Woodberry* v. *State*, 35 Ark. App. 129, 811 S.W.2d 339 (1991); *Ryan* v. *State*, 30 Ark. App. 196, 786 S.W.2d 835 (1990). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Williams* v. *State*, 298 Ark. 484, 768 S.W.2d 539 (1989); *Ryan* v. *State, supra.*

██ The State is required to prove every element of the crime charged beyond a reasonable doubt. *Patterson* v. *New York*, 432 U.S. 197 (1977); *Mullaney* v. *Wilbur*, 421 U.S. 684

(1975). Appellant alleges that an element of the crime of burglary is that it be the conscious object of the accused to commit an offense punishable by imprisonment at the time he illegally enters the occupiable structure. He argues that, assuming he was attempting to break into his neighbor's apartment, there was no evidence whatsoever that once inside he intended to do anything but use the telephone.

Intent is a state of mind which is not ordinarily capable of proof by direct evidence, but it may be inferred from the circumstances. *Ashley* v. *State*, 22 Ark. App. 73, 732 S.W.2d 872 (1987). The jury is allowed to draw upon its own common knowledge and experience to infer intent from the circumstances. *Tarentino* v. *State*, 302 Ark. 55, 786 S.W.2d 584 (1990); *Alford* v. *State*, 33 Ark. App. 179, 804 S.W.2d 370 (1991). Circumstantial evidence may constitute substantial evidence. *Lukach* v. *State*, 310 Ark. 38, 834 S.W.2d 642 (1992); *Hill* v. *State*, 299 Ark. 327, 773 S.W.2d 424 (1989). To be sufficient to sustain a conviction, the circumstantial evidence must exclude every other reasonable hypothesis consistent with innocence. *Lukach*, *supra*; *Bennett* v. *State*, 308 Ark. 393, 825 S.W.2d 560 (1992). Whether the evidence excludes every other reasonable hypothesis is for the finder of fact to determine. *Davasher* v. *State*, 308 Ark. 154, 823 S.W.2d 863 (1992). It is only when circumstantial evidence leaves the jury solely to speculation and conjecture that it is insufficient as a matter of law. *Ward* v. *State*, 35 Ark. App. 148, 816 S.W.2d 173 (1991).

We have held that evidence of breaking into a house is not evidence of intent to commit a crime therein. *See Norton* v. *State*, 271 Ark. 451, 609 S.W.2d 1 (1980); *Wortham* v. *State*, 5 Ark. App. 161, 634 S.W.2d 141 (1982). In *Norton*, shortly after the sound of breaking glass was heard, appellant was observed opening from the inside the front door of an office building, which had been secured for the night, and speaking to two acquaintances who were walking by. When later that evening the owner of the building discovered the front door open, a window broken out, glass on the floor, and her window drapes down, a police investigation ensued. It was learned, however, that nothing was taken from the office building. Appellant was convicted of burglary. The Arkansas Supreme Court reversed, stating that, although the prosecution had proved the appellant had illegally

entered the office building, there was no proof that he had taken, or even touched, any property inside the building.

In *Wortham, supra*, two thirteen-year-old girls were painting in the bedroom of one girl's house. A radio was playing loudly in the kitchen. One of the girls went into the living room, where she saw appellant standing inside the house in the open doorway. She screamed and appellant ran away. We reversed appellant's conviction of burglary because, we said, there were several explanations of appellant's actions which would be inconsistent with guilt. We pointed out, for example, appellant might have entered the open door of the house when he could not get anyone to hear his knock above the noise of the radio. 5 Ark. App. at 162.

In *Jiminez* v. *State*, 12 Ark. App. 315, 675 S.W.2d 853 (1984), a police officer responded to a call to investigate a possible break-in just in time to find appellant sitting in a corner in the living room. A window in the back door was broken; some dishes, glasses and silverware had been wrapped in towels and placed in a large pail; and curtains were torn off the living room wall and used to wrap a staple gun and some other items. In affirming the conviction, we distinguished both *Wortham* and *Norton*, on the basis that in those cases the State had proved only that appellant was "merely present." In *Jiminez*, we said, the State had proved "presence" plus other facts and circumstances from which the trial court could infer that appellant had the requisite intent. 12 Ark. App. at 318.

Here, the State relies on *Cristee* v. *State*, 25 Ark. App. 303, 757 S.W.2d 565 (1988), to support its argument that there is adequate circumstantial evidence of appellant's motive to support a finding of guilt. Cristee was convicted of attempted burglary on evidence that during the night a lumberyard burglar alarm sounded; a neighbor saw someone climbing the fence that enclosed the lumberyard; and the neighbor's son chased the man some distance before he was caught and arrested by a police officer. We discussed *Norton, Mullaney* v. *Wilbur*, and *Patterson*, all cited *supra*, and determined that the evidence of a hole in the office wall, the burglar alarm sounding at night, and appellant climbing the fence and fleeing would support the finding of guilt. We said we could think of no other rational reason to explain his conduct. 25 Ark. App. at 308.

In the instant case, the State contends that evidence that (1) appellant attempted to get the Hinderliters' apartment door open on two separate occasions; (2) there was damage to the Hinderliters' apartment door and lock; (3) appellant's driver's license was frayed in a way that made Officer Crews thinks it had been used to "jimmy" a lock; and (4) appellant fled the scene supports the jury's finding of guilt on the burglary charge. We disagree. Although the actions of an accused in fleeing from the scene of a crime is a circumstance that may be considered with other evidence in determining probable guilt, *Cristee, supra*, the evidence here is that appellant was only gone from his apartment about fifteen minutes, and the police were still there when he came back. We also think there is insufficient evidence of appellant's intent, if he had been successful in getting the Hinderliters' apartment door open, to allow the jury to pass beyond speculation and conjecture.

We do think, however, that the evidence was sufficient to support a finding that appellant was guilty of the lesser included offense of attempted criminal trespass, which is committed if a person purposely attempts to enter or remain unlawfully in or upon the premises of another. *See* Ark. Code Ann. § 5-39-203(a) (1987) and Ark. Code Ann. § 5-3-201(a)(2) (1987). The jury was instructed on this offense, and we modify the judgment to show a conviction of attempted criminal trespass, a Class C misdemeanor, and remand to the trial court for resentencing. *See Benson v. State*, 19 Ark. App. 345, 720 S.W.2d 340 (1986).

Affirmed as modified and remanded.

JENNINGS, C.J., and COOPER, J., agree.