The Honorable Jeff Wood State Representative 4097 Austin Lakes Circle Sherwood, AR 72120-8019
Dear Representative Wood:
I am writing in response to your request for my opinion on the following questions:
 1. What are the powers, roles and duties of the prosecuting attorney's office and law enforcement officials in regards to enforcing Arkansas Code Ann. 5-37-203 for secured creditors?
2. What constitutes a violation of Arkansas Code Ann. 5-37-203?
 3. How should the prosecuting attorney and law enforcement officials proceed under Ark. Code Ann. 5-37-203 in the typical situation when the auto dealer and buyer enter into a contract that specifies that the vehicle being purchased cannot be taken out of the state without the permission of the auto dealer, who is financing the purchase, but the purchaser defaults by leaving the state and discontinuing payments? At what point does the situation described above become a criminal matter implicating ACA 5-37-203?
RESPONSE
With respect to your first and second questions, I believe law enforcement officers and prosecutors should enforce A.C.A. § 5-37-203, which criminalizes defrauding secured creditors by disposing of property subject to a security interest with the purpose of hindering that interest, in precisely the same way as they would any other felony statute — i.e., by proceeding with enforcement upon a proper determination that probable cause exists to believe an individual has committed the offense. With respect to your third question, if a buyer removes property subject to a security interest from the state in derogation of a condition of purchase, the conduct would initially appear to constitute a breach of contract giving rise to a civil action for damages. If the buyer removes the property with the purpose of hindering the seller's enforcement of the security interest, the removal would further appear to qualify as criminal conduct under A.C.A. § 5-37-203.
Question 1: What are the powers, roles and duties of the prosecutingattorney's office and law enforcement officials in regards to enforcingArkansas Code Ann. 5-37-203 for secured creditors?
Section 5-37-203 of the Code (Repl. 1997) provides:
 (a) A person commits the offense of defrauding secured creditors if he destroys, removes, cancels, encumbers, transfers, or otherwise disposes of property subject to a security interest with the purpose to hinder enforcement of that interest.
(b) Defrauding secured creditors is a Class D felony.
Section 5-1-102(17) of the Code (Supp. 2003) provides that "`[p]urposely' and equivalent terms such as `purpose' or `with purpose' have the meaning specified in § 5-2-202(1)." Section 5-2-202(1) of the Code (Repl. 1997) provides:
 "Purposely." A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result.
I believe the power of law enforcement officers and prosecutors "to enforc[e] Arkansas Code Ann. 5-73-203 for secured creditors" is the same as these officials' powers to enforce any other criminal law proscribing specified conduct as felonious.
Specifically with respect to the standard law enforcement officers must observe in effecting felony arrests, whether with or without a warrant or in a public or private location, see Ark. Op. Att'y Gen. No. 2001-017. Probable cause is required both for law enforcement officers to detain a suspect arrested pursuant to any felony statute and for a prosecutor to proceed with a prosecution pursuant to an indictment or an information.[1]
With respect to the latter requirement, the United States Supreme Court declared in Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978):
 In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Oyler v. Boles, 368 U.S. 448, 456.
(Emphases added; footnote omitted). However, as the court noted in Nancev. State, 323 Ark. 583, 595, 918 S.W.2d 114 (1996):
 Lack of probable cause is not a statutory ground for a motion to set aside an indictment, Ark. Code Ann. § 16-85-706 (1987), McDonald v. State, 155 Ark. 142, 244 S.W. 20 (1922), State v. Fox, 122 Ark. 197, 182 S.W. 906 (1916), or, by implication, to quash an information, Neely [v. State], 317 Ark. 312, 877 S.W.2d 589 [(1994)].
 Further, in State v. Garrison, 272 Ark. 470, 615 S.W.2d 371 (1981), this court held that the circuit court lacked authority to conduct a preliminary hearing, pending trial, to determine if probable cause existed to justify the charge brought by information and then to dismiss the information for want of probable cause. The Garrison court stated there was no constitutional or statutory authority for such a hearing, which it distinguished from the situation where the court must determine whether probable cause exists for extended restraint of an accused following an arrest. Gerstein [v. Pugh], 420 U.S. 103
[(1975)]; see also Ark. R. Crim. P. 8.3. In Garrison, . . ., the latter situation was not involved because the charge against the accused had already been filed in the circuit court and the issue of his pretrial detention had been judicially determined. See also State v. Watson, 307 Ark. 333, 820 S.W.2d 59 (1991) (stating it was error for the circuit court to grant the accused's motion to dismiss the information on the ground that the state's proffered facts did not sustain the charge); accord State v. Jamison, 277 Ark. 349, 641 S.W.2d 719 (1982).
 An accused is not entitled to a judicial review of the prosecutor's filing an information charging him with an offense. Garrison, 272 Ark. 470, 615 S.W.2d 371. See also Gerstein, 420 U.S. at 118-19 ("In holding that the prosecutor's assessment of probable cause is not sufficient alone to justify restraint of liberty pending trial, we do not imply that the accused is entitled to judicial oversight or review of the decision to prosecute.").
In only a few instances have the appellate courts found occasion to construe A.C.A. § 5-37-203. In Anderson v. State, 62 Ark. App. 1,967 S.W.2d 569 (1998), an auto sales business financed the sale of a vehicle and assigned its rights in the vehicle to a bank, guaranteeing payment of the debt.[2] Id. at 3. The purchaser moved, taking the vehicle with him, and eventually stopped making payments, prompting the auto sales dealer to complain to the prosecutor, who filed an information alleging that the appellant and his wife had violated A.C.A. § 5-37-203 by failing to pay for the vehicle and leaving the area for the purpose of hindering the enforcement of a security interest. Id. at 4. The appellant had apparently left the vehicle to deteriorate in his yard, leaving the keys in the ignition for the convenience of anyone seeking to repossess it.Id. at 5. The court reversed a jury's conviction of the appellant under these circumstances, offering the following reasoning:
 Here, appellant did not dispose of the truck, and although the truck had deteriorated, it was not destroyed, so the only conceivable basis for the State to pursue appellant was the "removal" of the truck with the purpose to hinder enforcement of the lien. The very nature and purpose of a truck is to be moved about. The fact that appellant's circumstances caused him to move to another town and take the truck with him does not constitute substantial evidence of the requisite purposeful intent, the highest level of culpable mental state that can be required under Arkansas law.
Id. at 7.
In support of this disposition, the court of appeals cited and discussed the following precedent:
 Eggleston v. State, 16 Ark. App. 72, 697 S.W.2d 121 (1985), cited by appellant, is somewhat analogous and gives some guidance. Mr. Eggleston was prosecuted for violation of the same statute. His employer, South Central Career College, purchased a car for him since he could not obtain a loan due to a poor credit history. South Central held title to the car, and it was financed through Twin City Bank. South Central deducted payments from his paycheck. Mr. Eggleston was also responsible for other expenses such as taxes, license fees, and insurance. When Mr. Eggleston left the employ of South Central, he discussed the car situation with the owner of South Central and stated that Eggleston's accountant would contact him about refinancing the automobile or paying it off in full. The accountant did call South Central's owner, but nothing was resolved within the two days that it was anticipated to take. The staff at South Central was thereafter unable to locate Mr. Eggleston, and the owner soon took his grievance to the law enforcement authorities. The bank, the secured creditor, was not involved in the proceeding, and no representative of the bank testified at trial. While South Central was not a secured creditor, it did have a contractual relationship with Mr. Eggleston. There we saw no evidence of purposeful intent to hinder the enforcement of a security interest.
62 Ark. App. at 7.
Both of these cases are instructive in that they illustrate that appellate courts will rigorously review whether the conduct of a defendant charged under A.C.A. § 5-37-203 indeed reflects what the court inAnderson characterized as "requisite purposeful intent [to defraud a secured creditor], the highest level of culpable mental state that can be required under Arkansas law." 62 Ark. App. at 7.
In Eggleston after the court of appeals reversed the defendant's conviction in the trial court, he successfully filed a civil suit for malicious prosecution against his former employer and its president. InEggleston v. Ellis, 291 Ark. 317, 724 S.W.2d 462 (1987), after scrupulously reviewing the claim that the defendants had reasonably relied upon the advice of counsel in filing criminal charges, the Arkansas Supreme Court reversed a trial court's ruling setting aside the jury's verdict against the civil defendants. Id. at 320. In my opinion,Eggleston v. Ellis illustrates that a disgruntled creditor might need to exercise considerable caution before seeking a criminal prosecution of a debtor who has defaulted in his payments and removed the collateral. Both this case and the underlying criminal prosecution reveal how strictly courts will enforce the daunting mental state requirement to sustain a conviction under A.C.A. § 5-37-203.
The court most recently addressed the application of A.C.A. § 5-37-203 inBank of Eureka Springs v. Evans, ___ Ark. ___, 109 S.W.3d 672 (2003) — an appeal from a civil action for malicious prosecution in the wake of an unsuccessful criminal prosecution pursuant to A.C.A. § 5-37-203. In affirming a jury's verdict in favor of the civil plaintiff, the court offered the following analysis:
 Here, the evidence viewed in the light most favorable to the appellee reveals substantial evidence to support the jury's verdict. As outlined above, the evidence reveals an intentional, malicious pattern of behavior on the part of the Bank. The Bank failed to reveal that its information, in the form of the loan worksheet and board meeting minutes, indicated that the Bank knew of Mr. Evans's plan to harvest timber in order to pay his loan back. The Bank went to the prosecutor and informed him that no timber proceeds had been used to pay down the loan, but this information turned out to be false. The Bank accused Mr. Evans of wrongfully selling a bulldozer, boat and motor when in fact none of those things had happened. The Bank misrepresented material facts to the prosecutor and never corrected them, in spite of having ample time and opportunity to do so. The Bank argues that it was the prosecutor's decision to pursue the case against Mr. Evans and that it was merely a passive party. We have answered a similar argument by holding that when the information given to the prosecutor "is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information." Schiesser [sic: South Arkansas Petroleum v. Schiesser, 343 Ark. 492 (2001)], 343 Ark. at 496, 36 S.W.3d at 319 (quoting Restatement (Second) of Torts § 653 cmt. g) (emphasis added by the Schiesser [sic] court). Here, the prosecutor was not supplied with accurate information and so the Bank's effort to shift responsibility to the prosecutor fails.
109 S.W.3d at 682. Like Eggleston v. Ellis, this case illustrates that a secured creditor should consider carefully before alleging that the debtor purposely violated the terms of A.C.A. § 5-37-203.
Finally, I should note that the risk that law enforcement officers or prosecutors acting upon a good-faith determination of probable cause might be subjected to civil litigation for malicious prosecution in the wake of an unsuccessful prosecution under A.C.A. § 5-37-203 would appear to be minimal or nonexistent. Counties and municipalities and their employees, including law enforcement officers, are afforded a qualified immunity from tort liability except to the extent of insurance coverage. A.C.A. §21-9-301. Moreover, state employees such as state policemen enjoy a limited immunity pursuant to A.C.A. § 19-10-305(a), which provides:
 Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.
In addition, plaintiffs who allege that they have been denied their civil rights under color of state law can sue officials in federal court. Section 1983 of title 42 of the United State Code provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
State law immunities do not override a cause of action under this statute. See Monell v. New York City Department of Social Services,436 U.S. 658 (1978). However, individual officials enjoy a qualified immunity from any action alleging such a violation of federal law. As stated in Ark. Op. Att'y Gen. No. 1999-363:
 Under the doctrine of qualified immunity, an official is immune from trial if he undertook the actions complained of in good faith in the performance of one's duties, and the acts do not violate any clearly established constitutional right. Harlow v. Fitzgerald, 457 U.S. 800
(1982). The test for the applicability of qualified immunity turns upon the "objective legal reasonableness of the action," assessed in light of legal rules that were "clearly established" at the time the action was taken. See Anderson v. Creighton, 483 U.S. 635 (1987). The immunity is "qualified" because it does not obtain where the activity is in violation of clearly established law that a reasonable person would have known. Robinson v. Beaumont, 291 Ark. 477, 725 S.W.2d 839 (1987); Matthews v. Martin, 280 Ark. 345, 658 S.W.2d 374 (1983).
Finally, a prosecutor engaged in the conduct of his office is cloaked with an absolute immunity from suit. In Culpepper v. Smith,302 Ark. 558, 571, 792 S.W.2d 293 (1990), the court quoted with approval from Imbler v. Pachtman, 424 U.S. 409 (1976), discussing the common law immunity of prosecutors, and held that a prosecuting attorney's immunity from civil suits for damages "is absolute and is established by precedents of this court and the Supreme Court of the United States of such long standing as to now permit no exception or modification." InKalina v. Fletcher, 522 U.S. 118, 124 (1997), the Supreme Court declared that, for reasons of policy based on the need to leave prosecutors with unfettered discretion to pursue their roles, this absolute immunity applies even if "the decision to prosecute was malicious and unsupported by probable cause" and regardless of whether the claim leveled against the prosecutor is based upon common or statutory law. However, as the Court further acknowledged in Kalina, id. at 129, a prosecutor will be cloaked only with qualified immunity if he undertakes a nonprosecutorial function such as personally attesting to the truth of facts alleged in an affidavit in support of filing an information. Accord Imbler v.Pachtman, 424 U.S. 409, 410, 430-431 (1976); Buckley v. Fitzsimmons,509 U.S. 259, 273 (1993); Malley v. Briggs, 475 U.S. 335, 340-341 (1986).
In response to your general question, then, I believe law enforcement officers and prosecutors should proceed to enforce A.C.A. § 5-37-203 in precisely the same fashion as they would any other statute defining a felony upon a determination that probable cause exists to believe that an individual has disposed of property subject to a security interest with the purpose of impairing that interest. I see nothing in this statute that complicates the enforcement obligations of these officials.
Question 2: What constitutes a violation of Arkansas Code Ann. 5-37-203?
See response to previous question.
Question 3: How should the prosecuting attorney and law enforcementofficials proceed under Ark. Code Ann. 5-37-203 in the typical situationwhen the auto dealer and buyer enter into a contract that specifies thatthe vehicle being purchased cannot be taken out of the state without thepermission of the auto dealer, who is financing the purchase, but thepurchaser defaults by leaving the state and discontinuing payments? Atwhat point does the situation described above become a criminal matterimplicating ACA 5-37-203?
I should note initially that I am unaware of any legal principle that would preclude an auto dealer from conditioning financing a sale upon an agreement that the purchaser seek the financing dealer's permission before removing the vehicle from the state.
Assuming a sale were subject to such a condition, any breach of the condition would in the first instance constitute a breach of contract, giving rise to a civil cause of action by the dealer against the purchaser. The question of whether the breach would further give rise to a criminal cause of action under A.C.A. § 5-37-203 could only be answered by considering the attending circumstances in any particular case. As suggested in my response to your first question, assuming the breach actually occurred, the operative question would be whether the purchaser removed the vehicle from the state and discontinued payments with the purpose of defrauding the secured creditor. If the creditor filed a criminal complaint and the authorities found probable cause to believe the debtor's conduct amounted to purposeful fraud, I believe they may proceed to enforce A.C.A. § 5-37-203 in the manner discussed in my response to your first question.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
Enclosure
[1] For the general rules governing prosecution by information or bill of particulars, on the one hand, and indictment, on the other, see subchapters 3 and 4 of chapter 85 of title 16 of the Arkansas Code.
[2] The court did not discuss the details of this assignment of rights, but it would appear that it dissolved any security interest the auto sales business might once have had in the vehicle. This point is immaterial, however, for purposes of determining whether the purchaser had violated the criminal statute, since the security interest presumably survived the assignment of rights.