Michael WALKER *v.* STATE of Arkansas

CR 93-60 855 S.W.2d 932

Supreme Court of Arkansas
Opinion delivered June 21, 1993

Bill Luppen, for appellant.

Winston Bryant, Att'y Gen., by: Cathy Derden, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. This is an appeal from Michael Walker's conviction on first degree murder charges and sentence to life imprisonment for the shooting death of Shawn Walls on November 1, 1991, at approximately 10:30 p.m. On appeal, Walker claims the evidence was insufficient to support his conviction and that the trial court erred in failing to grant his motion for mistrial based upon the trial court's failure to delete certain irrelevant prejudicial and misleading questions contained in his statement to the police after his arrest. We disagree and affirm.

Testimony at trial revealed that Shawn Walls was shot in the forehead in the driveway of his uncle's home where he lived. Walker was present when the shooting took place; however, in his statement to the police, he asserts that Shawn committed suicide. In taking his life, Walker claims Shawn simply stated, "Well, Mike, man, I'm gone dude." Then Shawn pointed a gun up to his forehead and pulled the trigger. There were no other eye-witnesses.

## SUFFICIENCY OF THE EVIDENCE

■ Walker made timely motions for directed verdict as provided by Ark. R. Crim. P. 36.21(b) which were denied by the trial court. Directed verdict motions are treated as challenges to the sufficiency of the evidence. Bennett v. State, 308 Ark. 393, 825 S.W.2d 560 (1992).

■ On appeal, we review the evidence in the light most favorable to the State and affirm the verdict if it is supported by substantial evidence. Lukach v. State, 310 Ark. 38, 834 S.W.2d 642 (1992); Hill v. State, 299 Ark. 327, 773 S.W.2d 424 (1989). We recently said:

The general rule with respect to sufficiency of the evidence is:

The evidence to support a conviction, whether direct or circumstantial, must be of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. *Smith* v. *State*, 308 Ark. 390, 824 S.W.2d 838 (1992). We will affirm the verdict of the trial court, if it is supported by substantial evidence, and circumstantial evidence may constitute substantial evidence. *Hill* v. *State*, 299 Ark. 327, 773 S.W.2d 424 (1989). To be sufficient to sustain a conviction, the circumstantial evidence must exclude every other reasonable hypothesis consistent with innocence. *Bennett* v. *State*, 308 Ark. 393, 825 S.W.2d 560 (1992).

*Igwe* v. *State*, 312 Ark. 220, 222, 849 S.W.2d 462 (1993). *See Anderson* v. *State*, 312 Ark. 606, 852 S.W.2d 309 (1993); *Green* v. *State*, 310 Ark. 16, 832 S.W.2d 494 (1992); *William* v. *State*, 298 Ark. 484, 768 S.W.2d 539 (1989).

The trial record reflects that the day after the shooting, Walker made a statement to the police that Walls had committed suicide in his presence. On appeal, he argues that this explanation of Shawn Walls' death is just as plausible as the State's position that he murdered Shawn Walls. To the contrary, there is simply no evidence favorable to Walker's allegation of suicide. All evidence supports the proposition that Walker purposely killed Walls.

Shawn Walls was shot on the night of November 1, 1991. The shooting took place in the driveway of his uncle's home where he lived with his sister and grandmother. Shawn's uncle, Edward Walls, testified that he answered the door about 9:30 p.m. and found Reginald Johnson at the door wanting to see Shawn. Although Reginald Johnson was the only one at the door, he could see other young men out in the driveway. Shawn went outside. Some ten to fifteen minutes later Shawn's sister, Chrishawanda Walls, informed her uncle that her brother had been shot. The uncle went outside and found him laying in the driveway with a bullet wound to the forehead. He testified that he had never seen Shawn with a gun, and that he did not know of any guns in the house.

Chrishawanda Walls testified that she had been in her brother's room listening to music with him when her uncle called him to the door. She stated that she did not see her brother with a gun, that she had been in his room many times and had never seen a gun, that he did not have a gun with him when he went to the door, and that he did not pick up anything as he left his room to go to the door. Afterwards, Chrishawanda went to a window and saw several boys talking to him. About five to ten minutes later she heard a gunshot and what sounded like a person running through the leaves along the side of the house. As a result, she went outside and found her brother had been shot. No one else was around.

Officer Mike Henderson arrived at the scene within a few minutes after the shooting and found Shawn with a gunshot wound to the forehead. He secured the area but found no evidence, gun, or shell casings. He further stated that there was no blood trail, and it appeared the body had fallen where it had been shot. Mickey Holloway, an officer with the crime scene unit of the Little Rock Police Department, arrived a few minutes later. He also testified that a search of the scene turned up no gun or evidence. Holloway went to the hospital where Shawn had been taken and collected evidence from his hands for a gunshot residue test which was sent to the state crime lab. Gary Lawrence, a detective with the trace evidence section of the crime lab, testified that he examined the gunshot residue kit and found none of the chemical elements at the levels consistent with gunshot residue which are normally found on the hands of a person who has fired a gun.

Dr. David DeJong, the medical examiner who performed the autopsy on Shawn Walls, testified that there was nothing to indicate that he committed suicide, and from the manner of death it was his conclusion that this was a homicide. Shawn's uncle had earlier testified that Shawn was right-handed. Dr. DeJong stated that it would have been very difficult for a right-handed person to shoot himself based on the trajectory of the bullet and the location of the entry wound. Dr. DeJong further stated that there was nothing to indicate that this was a close contact wound, and that it was probably a distant shot.

The day after the shooting Walker was questioned by the police and gave a statement. His statement was taped, and the

tape was played to the jury.

In his statement, Walker said that he had been with Reginald Johnson and two other boys at the victim's house, and he (Walker) left with them in a car. A few minutes later he was let out of the car because he wanted to go to a nearby store to talk to a friend. Rather than go to the store, he returned to the house and found Shawn still outside. According to Walker, the victim had a gun and after a short conversation said, "Well, Mike, man, I'm gone dude," and pointed the gun up to his forehead. Walker stated that he caught the victim's hand with the gun in it, and that the gun went off. Walls dropped to the ground and Walker walked off. Walker stated that he did not know what happened to the gun.

After the shooting, Walker stated that he walked over to Cedric Ford's house and obtained a ride home; however, he did not tell Cedric or "any of them" that Shawn had killed himself. In his statement to the police he said he called Carolyn Green on the phone later that night and told her that Shawn had killed himself and that it was an accident. However, at trial, Ms. Green testified that she did not recall talking to Walker on the night in question, nor did she remember his telling her that Shawn had committed suicide. Other than the statement made by Walker to the police, there was no evidence presented at trial to indicate the deceased had committed suicide.

In contrast to Walker's suicide theory, there was substantial evidence to support Walker's conviction in the form of circumstantial evidence. Circumstantial evidence can provide the basis to support a conviction, but it must be consistent with defendant's guilt and inconsistent with any other reasonable conclusion. *Gillie v. State*, 305 Ark. 296, 808 S.W.2d 320 (1991). By his own admission, Walker was alone with Shawn Walls when he was shot. Shawn's sister and uncle testified that Shawn did not have a gun. No gun was ever found by the sister and uncle who went outside immediately after the shooting or by Officers Henderson and Holloway who arrived at the scene within minutes. Obviously, if the deceased had committed suicide and Walker had simply walked away from the scene as he said he did, the gun would have been there with the body. Also, the autopsy revealed that the angle of the bullet which killed Shawn indicated a homicide had occurred rather than a suicide since it would have

been extremely difficult for a right-handed person to shoot himself at this angle. No gunshot residue was found on the Shawn's hands indicating that he had fired a gun.

It is the responsibility of the jury to determine credibility, and the jury was not required to believe the testimony of any witness, even Walker. *Furr* v. *State*, 308 Ark. 41, 822 S.W.2d 380 (1992); *Core* v. *State*, 265 Ark. 409, 578 S.W.2d 581 (1979). A jury may consider and give weight to any false, improbable, and contradictory statements made by an accused explaining suspicious circumstances. *Watson* v. *State*, 290 Ark. 484, 720 S.W.2d 310 (1986). Thus, the probability or improbability of Walker's statement was additional evidence available to the jury to assess his truthfulness.

Walker was charged with having purposely caused the death of Shawn Walls. One acts purposely with regard to his conduct or a result thereof when it is his "conscious object to engage in conduct of that nature or to cause such a result." Ark. Code Ann. § 5-2-202(1) (1987). Intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the killing. *Williams* v. *State*, 304 Ark. 509, 513, 804 S.W.2d 346, 348 (1991). Furthermore, the intent necessary for first degree murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Id*. In this case the victim was shot once right between the eyes. The conclusion of the medical examiner was that the manner of death indicated a homicide. The purposeful intent of Walker can be inferred from this manner of death and the location of the wound.

In sum, there was sufficient evidence from which the jury could find that Walker was guilty of first degree murder.

## MISTRIAL

Walker further complains that the trial court committed error in not granting his motion for a mistrial based on the fact that he objected to the admission into evidence of three questions that were part of the taped police statement, and he argued they were highly prejudicial.

We do not reach this issue since Walker did not move for a mistrial at the time the tape was played to the jury. Instead,

Walker waited until the State had put on three more witnesses and had rested its case before he moved for a mistrial. It is well established that in order to preserve an argument for appeal, the appellant must make an objection at the first opportunity. *Williams* v. *State, supra.* Since this issue was not properly preserved, we need not address it.

## ARK. SUP. CT. R. 4-3(H) REVIEW

Under Ark. Sup. Ct. R. 4-3(h) (formerly Rule 11(f)), when a sentence of life imprisonment is imposed, we must review all errors which appear prejudicial to the appellant. In examining the trial court's rulings which were adverse to Walker, we find that the issue of admissibility of the three questions which were the subject of the motion for mistrial were also raised by Walker before and during trial, thus, requiring a further examination of this issue under Rule 4-3(h).

Before trial, Walker made a motion in limine to have three questions the police asked Walker deleted from the tape. He renewed his objection at trial before the tape was played, challenging the questions on the grounds of relevancy and prejudice. The trial court denied the objection on the basis that the questions and answers were not prejudicial to Walker, but were merely part of a longer statement made to the police which was relevant to the case.

When Walker was taken into custody for questioning in connection with the murder of Shawn Walls, he gave a taped interview to the police. Based on statements previously taken from other potential witnesses, the police asked Walker if he had ever made a statement that he was going to "put one in him," if he had ever made the statement that he was "insane," and if he was a gang member. Walker simply responded "no." The questions appear to have been asked in good faith and were only asked once with no follow up. In addition, these questions were part of a series of questions and answers that were nine typed pages and were given no particular emphasis by the prosecutor in his closing argument.

Walker argues that the mere fact that these questions were asked could lead the jury to believe that there was a basis to believe their substance. However, this same reasoning could

apply to all the questions to which Walker answered no. The trial court found that the entire statement made by Walker was relevant and admissible. The jury heard the questions but also heard Walker's denials. The trial court stated that it might be more unfair to Walker to cut the tape up or end it in an inappropriate place, either of which might indicate to the jury that something was being withheld. Although admissibility of this portion of Walker's statement is somewhat questionable, the trial court has discretion in determining the relevance of evidence and in gauging its probative value against unfair prejudice. Ark. R. Evid. 403; *Simpson* v. *Hurt*, 294 Ark. 41, 740 S.W.2d 618 (1987). The unfair prejudice, if any, resulting from these questions and answers was not so drastic as to warrant an assignment of error. The trial court's decision in this regard will not be reversed absent a manifest abuse of discretion. *Haynes* v. *State*, 309 Ark. 583, 832 S.W.2d 479 (1992); *Hubbard* v. *State*, 306 Ark. 153, 812 S.W.2d 107 (1991). Here, there was no such abuse.

An examination of the balance of the record under Rule 4-3(h) fails to reveal any other rulings adverse to Walker which appear to involve prejudicial error.

Affirmed.