Fernando NAVARRO *v.* STATE of Arkansas

CR 06-549 264 S.W.3d 530

Supreme Court of Arkansas
Opinion delivered October 4, 2007

*Susan Lusby*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Fernando Navarro was convicted in Washington County Circuit Court of the following criminal offenses: first-degree murder, aggravated robbery, residential burglary, and felony theft of property. The circuit court sentenced him to two consecutive life sentences for the crimes of first-degree murder and aggravated robbery, as well as five years and three years in prison for the offenses of residential burglary and felony theft of property, respectively. On appeal, Navarro raises seven points of error. As this is a criminal appeal in which a sentence of life imprisonment has been imposed, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(2) (2007). We find no error and affirm.

On Thanksgiving Day in 2004, Navarro and his co-defendant, Michael Chavez, agreed to rob an apartment they expected to be unoccupied. Upon discovering the victim, David Edwards, in the apartment, Navarro began to punch him with his fists and stab him with a knife. After the knife broke, he stabbed Edwards with a screwdriver. Navarro also beat the victim with a dumbbell and strangled him with a cord. Chavez poured a hot pot of beans onto the victim. The medical examiner's report later revealed that the causes of death were blunt force head injuries, multiple sharp force injuries, and scalding burns on the victim's head. A neighbor observed Navarro and Chavez removing several large items of property from the apartment and identified the car into which they were loading the items as a white Dodge Shadow. That car was later stopped for a traffic violation. Both men were inside the car, and Chavez was arrested for driving while intoxicated; but, because the homicide had not yet been discovered, Navarro was released. Shortly thereafter, the stolen property was dumped into a lake.

The following day, after the homicide was discovered, Navarro responded to a request by law enforcement that he report to the police department for questioning. He initially denied any involvement in the crimes but eventually confessed to hitting, kicking, and stabbing the victim. Navarro claimed that his friend Chavez was not involved but happened to be driving near the apartment building and offered him a ride. During the interview, Navarro stated that he could not remember any details because he had been intoxicated. For example, he could not remember what objects he used to stab the victim or what items of property he loaded into the car. When asked if he thought that he killed David Edwards, Navarro responded, "Probably, yeah." At the conclusion of the interview, Navarro was arrested.

At trial, Navarro asserted the defense of not guilty by reason of mental disease or defect. The jury heard testimony from experts on both sides and rejected the defense.

## I. *Sufficiency of the Evidence*

Navarro claims his convictions should be reversed because of the lack of any fingerprints or other forensic evidence tying him to any of the murder weapons or stolen property. He also points out that he only admitted to hitting and kicking the victim and possibly inflicting some non-fatal stab wounds. Double jeopardy considerations require this court to consider a challenge to the sufficiency of the State's evidence prior to the other issues raised in the case. *See Holsombach v. State*, 368 Ark. 415, 246 S.W.3d 871 (2007).

Our standard of review for a sufficiency challenge is well settled. We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

Furthermore, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion.

*Id.* Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* The credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

With regard to the charges of aggravated robbery, residential burglary, and theft of property, Navarro was convicted as an accomplice. When a theory of accomplice liability is implicated, we affirm a sufficiency-of-the-evidence challenge if substantial evidence exists to show that the defendant acted as an accomplice in the commission of the alleged offense. *Wilson v. State,* 365 Ark. 664, 232 S.W.3d 455 (2006). We have said that there is no distinction between principals on the one hand and accomplices on the other, insofar as criminal liability is concerned. *Id.* When two people assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Id.* One cannot disclaim accomplice liability simply because he did not personally take part in every act that went to make up the crime as a whole. *Id.*

### a. Residential Burglary

█ A person commits residential burglary if he enters or remains unlawfully in a residential occupiable structure of another with the purpose of committing in the structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2006). Chavez testified that he and Navarro went to the victim's apartment with the purpose of committing theft. He also testified that Navarro popped the lock with a card. This evidence amply satisfies the elements of residential burglary.

Navarro nonetheless asserts that there is no forensic evidence tying him to the stolen property. This argument is without merit. The State presented proof that he unlawfully entered the apartment with the purpose of committing theft, an offense punishable by imprisonment. Moreover, the statute does not require that property actually be stolen. *See* Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2006). Accordingly, we conclude there is substantial evidence to support the jury's verdict on the residential-burglary charge.

### b. First-Degree Murder

█ A person commits murder in the first degree if he commits or attempts to commit a felony and, in the course and

furtherance of the felony or in immediate flight from the felony, he or an accomplice causes the death of another person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-102(a)(1) (Repl. 2006). The State alleged in this case that the underlying felony was burglary, as defined in Ark. Code Ann. § 5-39-201 (Repl. 2006).

We have already concluded that the jury's verdict on the burglary charge is supported by substantial evidence. Likewise, we conclude that Navarro's murder conviction under the felony-murder statute is supported by substantial evidence. Specifically, the evidence is sufficient for the jury to conclude that Navarro caused the death of David Edwards. He admitted to hitting, kicking, and stabbing the victim. According to the autopsy report, these actions are consistent with two of the three causes of death — blunt force injuries to the head and multiple sharp force injuries. Furthermore, a knife blade was found at the crime scene, and a matching handle was later found in the driveway of the house where Navarro lived. Police also seized a screwdriver, which was consistent with the victim's wounds, from Navarro's bedroom. Items of clothing that were determined to be stained with the victim's blood were seized from his bedroom as well. We conclude that these facts are more than enough to support the jury's verdict.

Alternatively, a person commits murder in the first degree if, with a purpose of causing the death of another person, he causes the death of another person. Ark. Code Ann. § 5-10-102(a)(2) (Repl. 2006). A person acts purposely with respect to his conduct or as a result of his conduct when it is his conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2006).

As stated earlier, there is ample evidence to support the jury's conclusion that Navarro caused the death of David Edwards. With regard to the remaining mental-state element under section 5-10-102(a)(2), Navarro asserted the defense of mental disease or defect, but this issue was not raised in the directed-verdict motions. Furthermore, his arguments challenging the sufficiency of the evidence — the lack of forensic evidence and his statement that he merely punched, kicked, and stabbed the victim — are also without merit. Navarro's statement to the investigating officer indicated that his conscious object was to cause the death of David Edwards. While he stated that he did not mean to kill the victim,

the balance of his statement reflects otherwise. This court has held that intent is seldom capable of proof by direct evidence. *Walker v. State*, 324 Ark. 106, 918 S.W.2d 172 (1996). Usually it must be inferred from the circumstances of the killing. *Id.* The intent necessary for first-degree murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Id.* In the instant case, Navarro stabbed David Edwards several times with a knife and a screwdriver, beat him with dumbbells, and hit and kicked him repeatedly in the face. The jury could reasonably infer from this evidence that Navarro purposely intended to cause the victim's death. It is axiomatic that one is presumed to intend the natural and probable consequences of his actions. *Id.* We conclude that the evidence is sufficient to support a conviction of first-degree murder under sections 5-10-102(a)(1) and 5-10-102(a)(2).

### c. Aggravated Robbery

A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person. Ark. Code Ann. § 5-12-102(a) (Repl. 2006). A robbery is aggravated if the person is armed with a deadly weapon, represents by word or conduct that he is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-12-103 (Repl. 2006).

Once again, Chavez testified that he and Navarro had a purpose of committing theft when they went to the apartment. Navarro admitted, and the discovery of the knife handle, screwdriver, and bloodied clothes confirmed, that he used physical force upon David Edwards and that he was armed with a deadly weapon. His continued assertion that he was not forensically linked to any stolen property or to any of the murder weapons is irrelevant. The theft statute does not require that property actually be stolen. *See* Ark. Code Ann. § 5-12-102(a) (Repl. 2006). Similarly, a murder weapon is not required to enhance robbery to aggravated robbery. *See* Ark. Code Ann. § 5-12-103 (Repl. 2006). The recovery of the knife handle and screwdriver from Navarro's home is sufficient

proof that he was armed with a deadly weapon. Accordingly, the jury's verdict on the aggravated robbery charge is supported by substantial evidence.

### d. Theft of Property

■ A person commits theft of property if he knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(1) (Repl. 2006 & Supp. 2007). Navarro challenges the sufficiency of the evidence on the theft conviction by asserting that there were no fingerprints on the stolen property. His argument is unavailing.

■ In his statement to the investigating officer, Navarro admitted removing property from the apartment. Chavez testified that he and Navarro loaded property from the apartment into the car after the homicide. Another witness, Sarah Overton, testified that she observed Chavez and Navarro carry out a television and load it into the car, and that she saw several items of property already in the car. A neighbor testified that he saw two males removing property from the apartment. The police officer who arrested Chavez for driving while intoxicated observed several items in the car that matched the description of the stolen property. Thus, there is sufficient evidence from which to conclude that Navarro took the property of another person, with the purpose of depriving the owner of the property.

### II. The Affirmative Defense of Mental Disease or Defect

A defendant bears the burden of proving the affirmative defense of mental disease or defect by a preponderance of the evidence. *Davis v. State*, 368 Ark. 401, 246 S.W.3d 862 (2007). On appeal, our standard of review of a jury verdict rejecting the defense of mental disease or defect is whether there is any substantial evidence to support the verdict. *Morgan v. State*, 333 Ark. 294, 971 S.W.2d 219 (1998). This court will affirm a jury's verdict if there is any substantial evidence to support it. *Id.*

Navarro argues on appeal that he submitted evidence at trial that satisfied his burden of proof on the affirmative defense of mental disease or defect. He also argues that the standard by which this court reviews jury verdicts on the issue of mental disease or

defect is an insurmountable burden. Our court's standard of review, according to Navarro, should be changed to one of reasonableness, because the current standard effectively eviscerates the rule that a defendant need only prove the defense by a preponderance of the evidence. Specifically, Navarro suggests that the current standard deprives defendants of a defense expressly approved by the legislature. *See* Ark. Code Ann. § 5-2-312 (Repl. 2006).

At trial, the State put on the testimony of Dr. Robin Ross, a forensic psychiatrist at the Ozark Guidance Center, which contracts with the State to do mental health evaluations on defendants. Dr. Ross testified that Navarro showed no signs of significant cognitive impairment or active psychiatric disease. She diagnosed Navarro with alcohol dependence and marijuana dependence, neither of which constitutes a mental disease. She also testified regarding Navarro's IQ, which his own expert found to be 78. Dr. Ross stated that such an IQ indicated "borderline intellectual functioning," which is in the "low average range." She stated that, in her experience, people with that level of intellectual functioning are generally responsible for their actions.

Navarro called Dr. Ronald McInroe, a clinical neuropsychologist, to testify on his behalf. Dr. McInroe spent approximately twelve to fifteen hours evaluating Navarro, as contrasted with the one-hour evaluation by Dr. Ross. He testified that Navarro had a learning disorder, limitations in both English and Spanish expression, and a history of two head injuries (one of which resulted in three hours' loss of consciousness). According to Dr. McInroe, Navarro's verbal IQ was 69, which falls in the mildly mentally retarded range, and his performance IQ was 92. He opined that such a significant difference between the two components of the IQ test is extremely atypical and usually indicates either a head injury or a congenital abnormality. Dr. McInroe further reported that Navarro suffers from major depression, anxiety, and auditory hallucinations. Navarro, however, exhibited no signs of an anti-social personality disorder. Dr. McInroe also stated that his examination was more comprehensive than the one performed by Dr. Ross.

Although medical evidence and expert testimony can be highly persuasive, the jury is not bound to accept the opinion testimony of any witness as true or conclusive, including the opinion testimony of experts. *Davis v. State*, 368 Ark. 401, 246 S.W.3d 862 (2007). As the sole judge of the credibility of expert

witnesses, the jury has the duty to resolve conflicting testimony regarding mental competence. *Id.* In the instant case, the jury heard opinion testimony from Drs. Ross and McInroe that was totally contradictory. The jury was entitled to believe the testimony of the State's expert over that of the defendant's expert and to decide that Navarro had not proven the defense of mental disease or defect by a preponderance of the evidence. For this reason, we decline to overturn the jury's verdict.

As for Navarro's contention that our standard of review should be changed, we note that this court has a well-settled policy of affording deference to jury verdicts. The determination of the credibility of trial witnesses and the weighing of evidence are solely within the province of the jury. *Winston v. State*, 368 Ark. 105, 243 S.W.3d 304 (2006). To engage in a review based on reasonableness would invade the province of the jury. It would, in essence, constitute a second trial on the issue, with this court, rather than the jury, evaluating the credibility of witnesses and weighing the evidence. We are unwilling to engage in such a review. Navarro is correct in asserting that a jury's rejection of the defense of mental disease or defect may be upheld even in the absence of any evidence presented by the State on the issue. *Morgan v. State, supra; Davasher v. State*, 308 Ark. 154, 823 S.W.2d 863 (1992). However, this is no reason to change our existing standard of review; it simply shows that our deference to jury verdicts is so great that the jury may choose to reject all the evidence presented by one side on any issue. The jury, as fact-finder, is entitled to decide whether a defendant has satisfied his burden of proving mental disease or defect by a preponderance of the evidence. Accordingly, we decline to alter our standard of review.

### III. Jury Selection

Navarro next alleges that he was denied a fair trial by the administrative circuit judge's decision to select jury venires from lists of registered voters rather than from enhanced lists, which include registered voters as well as licensed drivers. He asserts the administrative circuit judge made a conscious choice to decline a method of jury selection that would yield higher percentages of Hispanic jurors.

Navarro bases his jury-selection argument on the Sixth Amendment of the United States Constitution. Our court has set forth the appropriate standard of review in cases involving the

interpretation of a constitutional provision. We read the laws as they are written and interpret them in accordance with established principles of constitutional construction. *State v. Oldner*, 361 Ark. 316, 206 S.W.3d 818 (2005). It is this court's responsibility to decide what a constitutional provision means, and a lower court's determination is to be reviewed *de novo. Id.*

It is well settled that the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to trial by jury. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692 (1975); *Danzie v. State*, 326 Ark. 34, 930 S.W.2d 310 (1996). A criminal defendant is entitled to require that the State not deliberately or systematically deny to members of his race the right to participate as jurors. *Danzie v. State, supra.* The defendant, however, bears the burden of proving systematic exclusion. *Id.* Once the defendant makes a *prima facie* showing of racial discrimination in the jury-selection process, the burden shifts to the State to justify its procedure. *Id.*

 This court has adhered to the standard set by the United States Supreme Court in *Duren v. Missouri*, 439 U.S. 357 (1979). *Danzie v. State, supra.* In order to establish a *prima facie* violation of the fair-cross-section requirement of the Sixth Amendment, a defendant must show the following: 1) the group alleged to be excluded is a distinctive group in the community, 2) the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community, and 3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri, supra.* In the case at bar, Navarro falls short of the requisite standard.

Navarro's fair-cross-section claim rests on the following facts. The jury pool from which Navarro's jury was selected included only one potential juror who identified herself as Hispanic on the questionnaires sent out by defense counsel with permission from the circuit court. At a pretrial hearing, defense counsel proffered data based on the most recent United States census, which indicated that approximately four percent of the populace in Washington County identified itself as Hispanic. The premise of the argument on appeal is that the one potential juror who identified herself as Hispanic represented only two percent of the total number of potential jurors. Defense counsel elicited testimony from the Washington County Circuit Clerk and her

chief deputy about the process used for summoning the venire in this case. The witnesses explained that 112 names were drawn randomly by computer from a jury pool of over 140 qualified people. Those 112 names were placed in alphabetical order, and they were called by the clerk's office in that order. The first seventy-eight who responded to the telephone call were asked to appear for jury duty. Navarro suggests that the one potential juror who identified herself as Hispanic did not get called because her last name begins with the letter "T," and by the time the clerk's office reached her name on the list, they had already obtained seventy-eight responses. The circuit court refuted Navarro's suggestion by pointing out that the potential juror was not called because she was not on the randomly selected list of 112.

The first prong of the *Duren* test has been satisfied here by virtue of the undisputed fact that Hispanics make up a distinctive group in the community. With regard to the second prong, however, Navarro's proof is insufficient. This court has followed the holding in *Duren* that the test requires a fair and reasonable representation of the distinctive group in every venire from which juries are selected, not just the particular venire summoned at a defendant's trial. *Danzie v. State, supra.* All that has been offered in this case is data on the number of Hispanics in Washington County and the number of Hispanics believed to be in this particular pool. Navarro has not offered proof of the number of Hispanics on every jury venire in Washington County. When not presented with data as to the representation of a particular group in all jury venires in the county, we have declined to speculate. *Danzie v. State, supra.* Finally, with regard to the third prong of the *Duren* test, Navarro offers no real argument as to how this alleged underrepresentation is due to systematic exclusion. He merely suggests that, if the county used the enhanced list rather than the registered voter list to select its juries, the percentages of Hispanics on juries would be more representative of the community. However, the current system of summoning juries has been consistently upheld by this court. *Danzie v. State, supra.* Administrative circuit judges for each county are given the choice of using the registered voter list or the enhanced list, based on a determination of whether the use of registered voters creates a sufficient pool to offer an adequate cross section of the community. *See* Ark. Code Ann. § 16-32-303 (Supp. 2007). Our court has been unwilling to mandate use of the enhanced list. *Danzie v. State, supra.*

## IV. Evidentiary Rulings

For his fourth point of appeal, Navarro alleges that the circuit court erred in refusing to enforce a subpoena issued on behalf of the defense and served on Dr. Stephen Erickson, the medical examiner who performed the autopsy. He claims Dr. Erickson would have testified that, at the time of death, the victim had a lethal dose of cold medicine in his system. Navarro asserts this testimony was critical to the defense, not only as evidence on the cause of death, but also as mitigating evidence, in that it would have shown that the victim did not suffer or that he suffered less than he would have otherwise. At the time of trial, Dr. Erickson was out of state, and the State's chief medical examiner, Dr. Charles Kokes, was called to testify on behalf of the State. Before Dr. Kokes testified, the circuit court granted the State's motion in limine to exclude evidence about the cold medicine. In any event, according to the State, Dr. Kokes would have testified that the dosage of cold medicine found in the victim's system would not have been lethal. Navarro now argues the circuit court erred in allowing Dr. Kokes to testify in Dr. Erickson's place. It is unclear from the record whether Navarro sought to have the circuit court enforce the subpoena or grant a continuance; in either case, we find no error.

The standard of review for alleged error resulting from denial of a continuance is abuse of discretion. *Price v. State*, 365 Ark. 25, 223 S.W.3d 817 (2006). Absent a showing of prejudice by the defendant, we will not reverse the decision of a trial court. *Id.* Furthermore, in discussing our standard of review for evidentiary rulings generally, we have said that trial courts have broad discretion and that a trial court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *White v. State*, 367 Ark. 595, 242 S.W.3d 240 (2006).

The court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case. Ark. R. Crim. P. 27.3 (2007). This court has dealt before with cases of missing witnesses. Where a doctor subpoenaed to testify at trial did not appear, the trial court attempted to have counsel stipulate as to what his testimony would have been; counsel would not agree. *Golden v. State*, 265 Ark. 99, 576 S.W.2d 955 (1979). Also, there was no request that the case be continued because of the witness's absence. *Id.* Pursuant to Ark. R. Crim. P.

27.3 and in the interest of prompt disposition of the case, we held the trial court did not abuse its discretion in carrying on without the doctor's testimony. *Id.*

The case at bar presents a similar situation. The parties disagreed regarding what Dr. Erickson's testimony would be if he were called as a witness. Navarro objected to Dr. Kokes' appearance as the State's expert witness but did not specifically request that the trial be continued until Dr. Erickson could be located. Furthermore, the toxicology report, which apparently would have resolved the issue of whether the dosage was lethal, was not proferred. Finally, the autopsy report signed by Drs. Erickson and Kokes, among others, did not list the cold medicine as a cause of death. For these reasons, we cannot say that the circuit court abused its discretion in refusing to enforce the subpoena or grant a continuance.

Navarro next argues that the circuit court abused its discretion when it refused to grant the defense a continuance so that it could consult an expert regarding autopsy photographs allegedly given to the defense one working day before trial. He claims the prosecutor's office had been telling him for over a year that there were no autopsy photographs in this case; but, on the Friday before the trial was to begin on Tuesday, the State indicated to defense counsel that there were autopsy photographs and that it intended to use them at trial. Navarro asserts that he could not have obtained funding for and consulted an expert in time for trial.

When a motion for continuance is based on a lack of time to prepare, we will consider the totality of the circumstances. *Davis v. State*, 318 Ark. 212, 885 S.W.2d 292 (1994). Where a defendant argued lack of time to prepare as a result of being notified of his trial date only ten days before trial, we upheld the trial court's denial of a continuance because the defendant failed to demonstrate prejudice. *Id.* The defendant in that case did not specify what could have been done but for the lack of time to prepare. *Id.* In the instant case, Navarro alleges he would have consulted an expert had he had sufficient time to do so. Yet, he has made no argument as to how the inability to consult an expert prejudiced him. Moreover, in objecting to the admission of the autopsy photographs, Navarro noted that the causes of death were stipulated by the parties, as was the fact that he or Chavez caused the death. We have upheld a denial of a continuance, requested due to insufficient time to prepare, when the evidence that would

have been discovered was stipulated. *Lee v. State*, 326 Ark. 529, 932 S.W.2d 756 (1996). Furthermore, in view of the totality of the circumstances, the circuit judge was correct in noting that Navarro had four days in which he could have e-mailed the photographs to an expert he had already consulted on other issues in the case. In light of these factors, we cannot say the circuit court abused its discretion.

For his next point of appeal, Navarro argues that the circuit court abused its discretion in permitting what he claims was expert testimony by a lay witness. Detective Bryan Johnson of the Springdale Police Department, the lead investigator on the case, testified that there was no blood found on the screwdriver recovered from Navarro's home. He further explained that it was not unusual to not find blood or fingerprints on objects, even after they had been touched or penetrated into a body. Navarro objected to that explanation on the basis that the detective was not qualified as an expert to make such a statement.

The State is correct in noting that we have previously dealt with this issue. *Robinson v. State*, 353 Ark. 372, 108 S.W.3d 622 (2003). In *Robinson*, an investigator with extensive experience in homicides testified that, based on his experiences with gunshot wounds to the head, there is often very little blood loss. *Id.* The defendant objected to this testimony, arguing that the investigator was not qualified as an expert. *Id.* This court held that it did not need to determine the investigator's qualifications as an expert because the State never offered him as an expert and he was never qualified as one. *Id.* Rather, he was testifying as a lay witness, and the requirements of Ark. R. Evid. 701 (2007) applied: the testimony in the form of opinions and inferences is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. *Id.* We held that the investigator's testimony was rationally based on his years of experience as a homicide investigator, and that his testimony was helpful to a clear understanding of the determination of a fact in issue, namely, whether the killer would have had to clean up a large amount of blood. *Id.*

Detective Johnson's testimony is analogous to the investigator's testimony in *Robinson*. He was not offered as an expert, nor was he qualified as one. The detective testified as to his opinion, rationally based on his thirteen years of experience as an investigator, which testimony was helpful to the jury's clear

understanding of his testimony or the determination of a fact in issue. The circuit judge's evidentiary ruling on this point was not an abuse of discretion.

For his penultimate argument, Navarro suggests that a reference to his tattoo in the video and transcript of his interview with the detective should have been excluded by the circuit court. During the course of the interview, Detective Johnson inquired about Navarro's tattoo, which read, "L.A." Specifically, the detective asked Navarro if he was born there, and Navarro responded that he was. Detective Johnson then asked how long he lived in L.A., whereupon Navarro replied, "Sixteen years." Finally, upon being asked if he had a lot of family and friends in L.A., Navarro answered, "I don't know. I didn't know nobody." That was the extent of the conversation on the subject. Navarro claims the circuit court erred in refusing to excise that portion, because the tattoo is highly suggestive of gang affiliation and, therefore, prejudicial under Ark. R. Evid. 403 (2007).

We agree with Navarro's assertion that the United States Supreme Court has found constitutional error where evidence of gang affiliation was admitted. *Dawson v. Delaware*, 503 U.S. 159 (1992). In *Dawson*, however, there was a stipulation that the defendant belonged to a prison gang. *Id.* In this case, Navarro offers no argument regarding why a tattoo reading "L.A." is suggestive of gang affiliation or activity. Furthermore, the conversation with Detective Johnson about the tattoo sheds no light on his contention that the tattoo is suggestive of gang affiliation.

In a case where a defendant gave a taped statement in which he was asked by the interviewer whether he was a member of a gang, this court upheld the circuit court's decision to admit the evidence. *Walker v. State*, 313 Ark. 478, 855 S.W.2d 932 (1993). In that case, the defendant objected to the question on the grounds of relevancy and prejudice and moved to have it deleted from the tape. *Id.* There was no follow up to the defendant's negative response to the question, the prosecutor did not emphasize it or suggest that the defendant was a gang member, and the question and answer were part of a nine-page transcribed statement that was relevant as a whole. *Id.* We held the question was asked in good faith and that the unfair prejudice, if any, was not so drastic as to warrant an assignment of error. *Id.* Likewise, in the instant case,

there was no follow up or suggestion based on the questions and answers about the tattoo. Navarro's statement was transcribed over the course of fifty-eight pages, and the discussion at issue here was a mere six lines. Based upon the brevity of the discussion in an otherwise completely relevant statement, coupled with the fact that Navarro offers no explanation as to how the tattoo suggests gang affiliation, we hold that the circuit court did not abuse its discretion in refusing to exclude the reference to Navarro's tattoo in the video and transcript of his interview with the detective.

For his final point on appeal, Navarro contends he was prejudiced by a showing of a video depicting his arrest. At the conclusion of his interview with Detective Johnson, Navarro was handcuffed and arrested. A video of the entire interview was played for the jury, and the circuit court denied Navarro's motion to excise that portion. Navarro argues that this ruling was an abuse of the circuit court's discretion.

As support for his argument on this point, Navarro suggests that the video of his arrest is analogous to appearing in court wearing prison clothing and visible shackles. We disagree. As the State points out, a defendant appearing in court in prison clothing and visibly shackled suggests to the jury that the defendant is a continuing threat, or that his tendencies for violence are so great that he must be restrained at all times. A video depicting an arrest for a crime that the jury is called upon to evaluate is not similarly prejudicial. No juror would be surprised to learn that Navarro was handcuffed and arrested after confessing to murder. The risk of prejudice is thus minimal.

Moreover, this court has long held that a litigant is entitled to a fair trial but not a perfect one, because there are no perfect trials. *Berna v. State*, 282 Ark. 563, 670 S.W.2d 434 (1984). As we have noted, "The harmless error rules adopted by this Court and Congress embody the principle that courts should exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *Id.* In other words, error which is not prejudicial may be considered harmless. Here, we cannot say that the jury's viewing of Navarro's arrest affected the essential fairness of his trial. Accordingly, we hold that the circuit court did not abuse its discretion in denying Navarro's motion to edit the video.

## V. Rule 4-3(h) Review

Pursuant to Ark. Sup. Ct. R. 4-3(h), the record in this case has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to Navarro, and no prejudicial error has been found.

Affirmed.